186 So.2d 520 (1966)
John Basil McNEELY, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 6185.
District Court of Appeal of Florida. Second District.
May 11, 1966.
Rehearing Denied June 7, 1966.
*521 W. Furman Betts, Jr., of Holland & Betts, St. Petersburg, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
ALLEN, Chief Judge.
Appellant, defendant below, makes timely appeal from an order revoking his probation.
In March of 1963, appellant entered a plea of guilty to charges of violating state narcotic laws. Defendant was placed on probation. Appellant was adjudged incompetent on August 24, 1964, and shortly thereafter his competency was restored. Appellant's probation supervisor testified that appellant admitted furnishing narcotics to certain individuals. If true, this would mean a violation of condition (h) of the probation order, which required the probationer to "live and remain at liberty without violating any law."
The order of probation was filed in the circuit court on March 29, 1963. The appellant made the alleged statement to his supervisor on August 12, 1964, and on October 13, 1964, an affidavit of violation was filed with the circuit court.
The first hearing was held on April 6, 1965, whereupon the defendant pleaded not guilty to the alleged violation charges. At this inquiry the appellant's probation supervisor, an inspector with the Florida State Bureau of Narcotics in Tampa, a Mr. Sullivan, appellant and counsel, along with several witnesses, appeared before the court. After this inquiry the court instructed the appellant to return on April 15, 1965, at which time an order would be entered.
The subject of this appeal requires us to consider the construction of Florida Statute 948.06(1), F.S.A., which provides as follows:
"948.06  Violation of probation; revocation; modification; continuance. 
"(1) Whenever within the period of probation there is reasonable ground to believe that a probationer has violated his probation in a material respect, any parole or probation supervisor may arrest such probationer without warrant wherever found, and forthwith shall return him to the court granting such probation. Any committing magistrate may issue a warrant upon the facts being made known to him by affidavit of one having knowledge of such facts for the arrest of the probationer, returnable forthwith before the court granting such probation. The court, upon the probationer being brought before it, shall advise him of such charge of violation and if such charge is admitted to be true may forthwith revoke, modify or continue probation and, if revoked, shall adjudge the probationer guilty of the offense charged and proven or admitted, unless he shall have previously been adjudged guilty, and impose any sentence which it might have originally imposed before placing the probationer on probation; if such violation of probation is not admitted by the probationer, the court may commit him or release him with or without bail to await further hearing, or it may dismiss the charge of probation violation. If such charge is not at said time admitted by the probationer and if it is not dismissed, the court, as soon as may be practicable, shall give the probationer an opportunity to be fully heard on his behalf in person or by counsel. After such hearing, the court may revoke, modify or continue the probation. If such probation is revoked, the court shall adjudge the probationer guilty of the offense charged and proven or admitted, unless he shall have previously been adjudged guilty, and impose *522 any sentence which it might have originally imposed before placing the probationer on probation."
Appellant submits the following question for determination:
Did the court err by failing to give the appellant probationer an opportunity to be fully heard before revoking probation under the above statute?
Appellant apparently interprets § 948.06 (1) to mean the first appearance before the judge in a revocation hearing should be similar to an arraignment procedure, on a separate day, as in a full scale criminal trial. Appellant further claims he did not appear before Judge Driver on April 6, 1965, expecting a full hearing and that the Florida Statutes do not make it incumbent upon the appellant to prepare for such at the first hearing, unless he pleads guilty.
First, the statutory wording "to await further hearing," is followed in the next sentence by "the court, as soon as may be practicable, shall give the probationer an opportunity to be fully heard on his behalf in person or by counsel." We are given no authority which would prevent the trial judge from conducting the inquiry after the appellant pleaded not guilty. This is not to say the hearing should follow the arrest immediately, for such is not the case here. The record also indicates the appellant's mother, aunt, and appellant's counsel's law partner, who was appellant's employer, were present on April 6, 1965, to apparently speak on his behalf. We feel this showed some evidence that appellant expected a hearing. Further, no objection was raised on April 6, 1965, regarding limiting the "hearing" to an arraignment-type procedure.
The record reflects that at the close of the April 6th hearing the judge told the defendant and counsel to report back on April 15, 1965, and at that time the court would enter its order on the charge of the violation. Having had an opportunity to speak, it would appear that counsel understood that an order followed a hearing.
The record shows the following transpired at the sentencing on April 15, 1965:
"THE COURT: Do you have anything you would like to add to what your client has had to say?

"MR. BETTS: Your Honor, I think I have said most everything I could at the time of the last hearing. * * *" (Emphasis supplied.)
Thus, counsel, in retrospect at the April 15th sentencing, apparently considered the inquiry on April 6th to be a hearing.
Approximately four months after counsel notified the court that he was the attorney, appellant appeared before the trial court with at least three potential spokesmen for his case. A combination of the above factors leads us to believe counsel had good reason to expect an inquiry rather than just an arraignment on April 6, 1965.
The idea of probation was summarized very ably by the trial judge before sentencing the appellant on April 15, 1965. He stated, inter alia, "This young man was given something not many people have in life, and that is a second chance. Probation is a revolutionary concept in the law. * * it is only going to work so long as those who are granted probation live up to it. Everytime a probationer violates a probation, it weakens the system. * * * Probation isn't a right, it's a rare privilege * * he [appellant] has demonstrated, and that's all we can go on, that he cannot and will not abide by the rules of society and the rules of this court." (Emphasis supplied.)
Due process necessitates according the probationer a hearing when a revocation of that privilege is in issue, but this requirement is met when the probationer is brought before the court for examination. Brill v. State, 1947, 159 Fla. 682, 32 So.2d 607.
*523 We adopt the views stated by our Supreme Court, in Brill v. State, supra, p. 609:
"* * * The hearing is in no sense a retrial of the main offense. Having plead guilty to that, he is now subject to be sentenced as he might have been at the time the suspended sentence was promulgated if he has not observed its conditions. The hearing was to determine this and no more.
"Such hearings are informal and do not take the course of a regular trial, neither does the evidence have the same objective as that taken at a regular trial. Its purpose is to satisfy the conscience of the court as to whether the conditions of the suspended sentence have been violated. A secondary purpose is to give the person accused of violating the suspended sentence a chance to explain away the accusation against him, but even this does not contemplate a strict or formal trial. * * * [Citations omitted]"
Having decided that April 6, 1965, was a proper time for an inquiry, the trial court's major concern was whether or not the appellant had violated his probation conditions. We feel the learned trial judge succeeded in this purpose.
Counsel urges reversal on the ground that the alleged statement or admission said to be made by the appellant may have been attributed to the incompetency of appellant.
The record reflects the following: Howard L. Miller, a supervisor with the Florida Probation and Parole Commission, testified that he interviewed the appellant in the county jail on August 12, 1964, and the following transpired:
"A. (BY MR. MILLER): I asked if he did furnish narcotics to this boy and he said he just furnished it to him. He said he made contact with him. I asked how he could get involved in this type of thing.
"Q. (BY THE COURT): And `he' is the defendant here?
"A. Yes. He returned my question with another question. He said `Have you ever seen anybody on this stuff?' and I said, no. That was the extent of the conversation. I got the impression there was sympathy for the boy more than anything else that he furnished him this marijuana. That was the extent of our conversation.
"THE COURT: You may ask any questions you care to, Mr. Betts. I would be glad to help you any way that I can."
We are aware that the defendant was adjudged insane several days after his statement or admission to this probation officer. While incompetency has a bearing in various areas of the law, we do not feel the defendant's mental condition should have any influence on the revocation decision.
It is insignificant that an investigation of appellant started due to his own statement, whether sane or insane. Again, let us say that this appellant had been spared from the four walls of prison by judicial grace. Once the trial judge had reason to believe the probationer had violated his conditions, and had some evidence, in addition to appellant's admission, to substantiate this belief, the appellant had his constitutionally protected day in court. The Supreme Court in Brill v. State, supra, p. 609, stated:
"* * * As already pointed out, we are now concerned with the question of whether or not the trial court abused his discretion in revoking the suspended sentence. This question is resolved not by evidence of guilt, but by evidence as to good behavior during the period of his suspended sentence. At the hearing some evidence was taken besides that secured by the search, [in the case at bar an admission] and this pointed very strongly *524 to the violation of the terms of the suspended sentence." (Emphasis supplied)
Phillips v. State, 1964, Fla.App., 165 So.2d 246, is cited, holding a sentence issued in revoking a probation is invalid when there is no hearing. There is great difference between no hearing and an alleged no hearing because the inquiry is informal. While the former is in fact not a hearing at all, the latter meets the requirements of a full hearing within the meaning of this statute. The appellant and his attorney were given the opportunity to be heard. For the above reasons the case is not controlling.
The appellant complains of hearsay evidence. The revocation will stand even though hearsay has been introduced provided there is other evidence on which the trial judge can base his decision.
The Court, in State ex rel. Ard v. Shelby, Fla.App. 1957, 97 So.2d 631, 633, stated:
"* * * The latitude of inquiry is such that even though evidence upon which the revocation is based would be inadmissible upon trial of the accused for a crime, it is competent for the trial court to consider it on the issue of compliance with the conditions under which suspension of sentence was granted."
The potential danger in approving an informal-summary type hearing is great. However, the entire probation process is a privilege and those to whom the arms of mercy have been extended should indeed conduct themselves accordingly. As stated, the purpose is to determine if good behavior has been tainted by bad conduct. It is true that the probation conditions are often broad and can easily be broken but it is only by grace that freedom is enjoyed in the first place. There is no doubt that the review power may be abused by a trial judge. But as stated in Cloud v. Fallis, Fla.App. 1958, 107 So.2d 264, which quoted from Shultz v. Pacific Insurance Co., 1872, 14 Fla. 73:
"* * * It is much better however, that exceptional cases of its improper exercise should be endured than that the security which it affords should be withdrawn. * * *"
In summary, a probation revocation hearing is not required to meet the standards of a full scale criminal trial by having a separate hearing for an arraignment; the inquiry may be on an informal basis; the trial judge has broad judicial discretion to determine whether conditions of probation have been violated; and the trial court does not have to observe the strict rules of evidence.
Affirmed.
PIERCE, J., and DEKLE, HAL P., Associate Judge, concur.