**Robert LAWSON, Petitioner,**

v.

**Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. C-68-3-E.**

United States District Court
N. D. West Virginia.

Oct. 15, 1968.

---

No appearance for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

In October, 1963, Petitioner, Robert Lawson, pleaded guilty to the offense of forgery and was sentenced to 1–10 years in the West Virginia State Penitentiary. He was paroled on June 24, 1965. Petitioner absconded supervision and on November 1, 1965, he left the state without permission, in violation of his parole. In Illinois he stole a truck, and he was arrested in Ohio on November 29, 1965, while driving this truck. Both West Virginia and Illinois authorities were notified of Petitioner's custody and both states indicated a desire to proceed

against him, West Virginia parole authorities requesting the Ohio authorities to hold him until available for return to West Virginia. On December 2, 1965, Petitioner waived extradition proceedings to the Illinois authorities. Petitioner now claims that he desired to waive extradition to West Virginia, but, on being advised that West Virginia did not desire to extradite, he waived extradition to Illinois. The waiver to Illinois contains the statement that it was made and signed without promise or inducement. In Illinois, Petitioner served a sentence for auto larceny, and was released on August 29, 1967. West Virginia had filed a warrant of arrest and hold order with the state of Illinois, and on these Petitioner was held for extradition.

On October 2, 1967, counsel was appointed to represent Petitioner in Illinois. This counsel requested time to file habeas corpus proceedings in Illinois. This habeas corpus petition was subsequently withdrawn, and the Petitioner executed a waiver of extradition to West Virginia. Petitioner was then delivered to the West Virginia authorities on November 4, 1967. On November 8, 1967, Petitioner received notice of his parole revocation hearing, informing him of his right to employ an attorney to represent his interests. This hearing was held November 13, 1967, at which time he was again advised that he had a right to be represented by an attorney. Petitioner appeared without an attorney, claiming at the hearing and by a prior submitted petition that West Virginia lost jurisdiction over his person by failing to extradite him from Ohio, at the time Illinois extradited him. The Parole Board, considering his testimony and his submitted petition, found Petitioner guilty of parole violation, and Petitioner has since been incarcerated to complete his prison sentence.

Petitioner now seeks a federal writ of habeas corpus, pursuant to Title 28, § 2254, United States Code, in which he offers two basic contentions: (1) that West Virginia impliedly waived and released all jurisdiction over Petitioner by relinquishing him to the Illinois authorities, and (2) that he was denied his right to appointed counsel at the parole revocation hearing in violation of the Sixth Amendment as applied through the Due Process Clause of the Fourteenth Amendment.

Having considered all the matters presented, the Court is of the opinion that the petition fails to raise or fairly to suggest any ground cognizable under federal habeas corpus.

Petitioner does not attack his prior conviction but challenges the decision of the Parole Board to revoke his parole. He contends that West Virginia relinquished jurisdiction by failing to extradite him from Ohio, and therefore cannot now constitutionally order him to complete his sentence.

A recent memorandum decision handed down by the Fourth Circuit Court of Appeals renders this contention devoid of merit. In Turner v. Boles (4th Cir. #11,692, April 3, 1968), a parolee from West Virginia was surrendered to Virginia where he was tried, convicted and placed on probation. Subsequently, West Virginia revoked his parole and returned him to prison. Petitioner there claimed the same relinquishment of jurisdiction as does the Petitioner in the case at bar. In dismissing the claim, the Court cited Banks v. O'Grady, 113 F.2d 926, 927 (8th Cir. 1940), saying "when a person has violated the criminal statutes of two different sovereigns, it is for the sovereigns and not the criminal to settle which shall first inflict punishment * * *. The power and right to punish the violator of its laws is not lost by a state because it consents to waive the infliction of punishment pending punishment by another state of the same criminal for violation of its laws * * *." This Court applied the rule in Dean v. State of Ohio, 107 F.Supp. 937 (N.D.W.Va.1952), stating at page 940 that "the separate sovereigns may voluntarily surrender a prisoner to each other without the consent of the prisoner,

and in such circumstances the question of jurisdiction and custody is purely one of comity between the sovereigns, not a personal right of the prisoner." Accord, United States ex rel. Hunke v. Ragen, 158 F.2d 644 (7th Cir. 1947); Strand v. Schmittroth, 251 F.2d 590 (9th Cir. 1957). Perhaps the clearest statement of this principle is contained in Ponzi v. Fessenden, 258 U.S. 254 at page 260, 42 S.Ct. 309, at page 310, 66 L.Ed. 607 (1922):

> One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. (Citations omitted). Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it.

The holding in the *Turner* and *Dean* cases above evolve from one jurisdiction knowingly and intentionally delivering a parolee by extradition to a second state for the purpose of prosecution, and later, reclaiming jurisdiction of the prisoner for violation of parole. A fortiori, in the principle case, West Virginia, by passively acquiescing to Illinois' extradition proceedings, in no way conclusively gave up their right to prosecute Petitioner for parole violation, but only postponed this right until Illinois had completed its jurisdiction of the Illinois offense.

Petitioner's second contention is that he was not afforded appointed counsel in his parol revocation hearing. It would serve well to examine the concepts behind parole. "Freedom, on parole from confinement in a penal institution prior to serving all of an imposed sentence, is a matter of legislative grace —it is neither a constitutionally guaranteed nor a God-given right." Jones v. Rivers, 338 F.2d 862, 874 (4th Cir. 1964). Formal litigation having long been completed, a parole revocation hearing is not, as such, an adversary proceeding. Its sole purpose is to determine whether the parolee, in the judgment of the Parole Board, is still a good parole risk. The problem is one of rehabilitation and not of conviction and punishment. Jones v. Rivers, supra; Washington v. Hagan, 287 F.2d 332 (3rd Cir. 1960).

The necessity for an attorney seems thus abrogated. Indeed, it is the well-settled rule that due process does not require that indigent parolees be provided with counsel when they appear at a parole revocation hearing. Jones v. Rivers, supra; Boddie v. Weakley, 356 F.2d 242 (4th Cir. 1966). Cf. Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963). However, Section 62–12–19, West Virginia Code (Michie 1968), concerning violation of parole, provides that "[w]hen a parolee is under arrest for violation of the conditions of his parole, he shall be given a prompt and summary hearing, at which the parolee *and his counsel* shall be given an opportunity to attend." Petitioner was duly informed of this statutory right to employ counsel in the notice of the parole revocation hearing, and, at the hearing itself.

By statutory authority, this Petitioner had the right *to hire* counsel, and this Court now holds that under the circumstances presented here, Petitioner had no right, statutory or otherwise, to have counsel *appointed* to aid him at his parole revocation hearing. Failure to have counsel appointed did not violate Petitioner's constitutional guarantee to due process of law. The rationale be-

hind this decision is contained in Jones v. Rivers, supra, 338 F.2d at 873:

> Certainly, a Board of Parole is not a judicial body. It has no right, statutory or otherwise, to appoint an attorney to represent a parolee at a revocation hearing and we reject the thought or suggestion that the Board should ever be clothed with any such power or authority. Nor should any court be empowered to require one of its attorney officers to undertake such representation before this administrative agency.

Thus it is apparent that where provision is made for hired counsel in the applicable West Virginia Code, there is no constitutional right to appointed counsel at this administrative hearing.

■ The determination is made notwithstanding Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) holding that the Sixth Amendment as applied through the Fourteenth Amendment requires that counsel be afforded to an indigent felony defendant in a proceeding for revocation of his *probation,* a judicial, not administrative, proceeding in West Virginia, and for the imposition of deferred sentence. *Mempa* can be readily distinguished from the case at bar. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) requires appointed counsel to be present at all stages of a criminal proceeding where substantial rights of the accused may be affected. In *Mempa* the effective date of sentence in a case where the defendant is placed on probation is the date of revocation of the probation, i. e., the final sentence is deferred to the date of the revoking of the probation, if and when such happening occurs. At this point recommendations of the sentencing judge and prosecutor are considered in setting the actual sentence. To assure correct marshalling of the facts before the court, the aid of counsel is necessary. But such considerations requiring aid of counsel never arise in a case involving parole as the sentence has already been imposed and fixed.

■ Likewise, and even more important, an attorney need be present to protect valid and important personal legal rights of the prisoner whose *probation* is ceasing, whereas, these same legal rights do not extend to a parolee. For example, *Mempa* discusses the right of appeal, in a case involving a plea of guilty with resulting probation, being available only after sentence is imposed at a revocation of probation, such appeal rights possibly being lost without the advice of counsel. In essence *Mempa* established that the time of sentencing at a proceeding for revocation of probation is a "critical stage" in a criminal case, while the same reasoning is patently inapplicable to a parole revocation hearing, since sentencing has already occurred.

■ Notwithstanding Petitioner's grounds being devoid of merit, his petition should be dismissed for failure to exhaust available state remedies. One detained under the judgment of a state court must show he has exhausted the remedies available to him in the state judicial system, or that there was an absence of state corrective processes, or the existence of circumstances rendering such processes ineffective to protect his rights, before applying to a federal court for release by writ of habeas corpus. 28 U.S.C.A. § 2254. Petitioner's contention that this Court is the proper authority having jurisdiction because of its power of seizure over interstate records herein involved is groundless.