**Lee L. COLE, Plaintiff,**

v.

**Gibson C. HOLLIDAY, Judge of the Ninth Judicial District of Iowa, Defendant.**

**No. 53540.**

Supreme Court of Iowa.

Oct. 14, 1969.

Rehearing Denied Dec. 8, 1969.

Ben E. Kubby, and John P. Roehrick, Des Moines, for plaintiff.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., for defendant.

LARSON, Justice.

On October 30, 1967, Lee L. Cole was charged with uttering and drawing a forged instrument in violation of section 718.2 of the 1966 Code. Pursuant to indictment and a written plea of guilty to the charge, she was sentenced to a term of not more than ten years in the Women's Re-

formatory at Rockwell City, Iowa, on March 8, 1968. However, the sentence was suspended and she was granted probation during good behavior under the supervision of the probation officers of the Iowa State Board of Parole, as provided for in section 247.20 of the 1966 Code, "subject to revocation under the provisions of 247.26 of the 1966 Code of Iowa."

On December 10, 1968, she was sentenced by the same judge to a term of not more than five years in the Women's Reformatory after she was found guilty of the crime of grand larceny in violation of section 709.1 of the 1966 Code, and this sentence was ordered to run concurrently with the ten year sentence previously imposed. In pronouncing sentence, pursuant to a hearing on the matter of the probation granted Lee L. Cole on December 10, 1968, the respondent judge found "That the defendant was convicted by jury trial in the Polk County District Court on the 25th day of November, 1968, Criminal No. 55150, and the defendant failed to appear for sentencing and a bench warrant was issued for her arrest and that said probation should be revoked and the defendant required to serve her sentence originally imposed." The judge then ordered "the probation granted to the defendant on the 8th day of March 1968, be now revoked * * and that mittimus issue."

Defendant appealed to this court on December 20, 1968, but pursuant to her petition for a writ of certiorari on May 21, 1969, hearing was had on June 4, 1969, and on June 9, 1969, three members of this court dismissed the appeal and granted the writ as prayed.

On June 24, 1969, Judge Holliday made a return on the writ.

Generally, the issues before us are whether a suspended sentence with probation, revoked without notice and hearing, is a violation of the due process clause of the Sixth and Fourteenth Amendments of the Constitution of the United States, and whether an attorney representing the parolee at the time of revocation must be present in court.

Plaintiff Lee L. Cole states the sole issues present here are: (1) Is section 247.-26 of the Iowa Code 1966 unconstitutional as a violation of the due process clause of the Fourteenth Amendment to the United States Constitution? (2) Was plaintiff entitled to a notice and hearing on the revocation of her sentence suspension under the due process clause of the Fourteenth Amendment of the United States Constitution? (3) Was it necessary that plaintiff have the assistance of counsel at the time her suspended sentence was revoked, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution?

As we view it, the controlling issue in this case is one previously considered by this court but to date has not been passed upon directly by the Supreme Court of the United States. Curtis v. Bennett, 256 Iowa 1164, 1167, 131 N.W.2d 1, 3, and citations. But see McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968). Contending to the contrary, counsel for the plaintiff asserts that the pronouncements of the Supreme Court of the United States in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), are controlling and that by virtue of that decision and the reasoning therein the plaintiff must be released from custody pending a full hearing on her sentence suspension revocation. We do not agree.

I. In the absence of statutory provisions for notice and hearing on the revocation of sentence suspension or probation, a previously convicted and sentenced person has no right to such a notice or hearing prior to revocation. Curtis v. Bennett, supra, 256 Iowa 1164, 131 N.W.2d 1; State v. Rath, 258 Iowa 568, 139 N.W.2d 468; Pagano v. Bechly, 211 Iowa 1294, 232 N. W. 798; Lint v. Bennett, 251 Iowa 1193, 104 N.W.2d 564, and citations; Rose v. Haskins, 388 F.2d 91 (6th Cir. 1968); Curtis v. Bennett, 351 F.2d 931 (8th Cir. 1965); annotation 29 A.L.R.2d 1074; Wil-

liams v. Patterson, 389 F.2d 374 (10th Cir. 1968); Lawson v. Coiner, 291 F.Supp. 79 (D.C.1968); United States v. Brierly, 288 F.Supp. 401 (D.C.1968); Holder v. United States, 285 F.Supp. 380 (D.C.1968); Sammons v. United States, 285 F.Supp. 100 (D.C.1968); Sorensen v. Young, 282 F. Supp. 1009 (D.C.1968); Beal v. Turner, 22 Utah 2d 418, 454 P.2d 624 (1969).

There are no statutory provisions in this jurisdiction for the granting of notice and hearing on the revocation of a suspended sentence. The contrary is set out in section 247.26 of the 1966 Code of Iowa, which provides: "A suspension of a sentence by the court as herein provided may be revoked at any time, *without notice,* by the court or judge, and the defendant committed in obedience to such judgment." (Emphasis supplied.)

It must be remembered this is not the case of a sentence *deferment.* Admittedly, such a case would raise the constitutional issue of whether defendant was represented by counsel at a critical period in the trial. Here the trial had been completed. Defendant had been furnished or had counsel representing her at all proceedings prior to and including sentencing. As to the crime charged against her, defendant had had her full day in court.

In Curtis v. Bennett, supra, 256 Iowa 1164, 1167, 131 N.W.2d 1, 3, we considered the question of revocation of probation or suspension of sentences without notice and hearing and had this to say thereon: "Iowa is among the majority of states which have consistently held that under statutes relating to revocation of probation or suspension of sentence which contain no express provision for notice and hearing, such a revocation without notice and hearing does not constitute a denial of due process. (Citations) In Pagano v. Bechly, supra (211 Iowa 1294, 232 N.W. 798), it was the claim of plaintiff that he had vested rights by reason of his parole of which he could not be deprived under the constitution without notice and an opportunity to

be heard, but this court said on page 1298 of 211 Iowa, page 800 of 232 N.W.: 'Being a matter of grace and forbearance on the part of the sovereign, the defendant acquired no vested rights, and therefore, under the statutory provisions [same as now], he would not be entitled to notice and opportunity to be heard.' " Thus, if the court believed it made a mistake in the suspension and concluded the sentence best be served as pronounced pursuant to conviction, that was sufficient.

In Bennett, we fully discussed the holding by most courts that conditional liberty *after* conviction is an act of grace or clemency extended by the trial court which conferred no vested rights to liberty on the convict, but which could be withdrawn at the discretion of the granting authority, that the convict accepted that liberty under those conditions and is bound by them. We noted that this view, as well as the view that such suspensions create a vested right in the convict, were fully discussed in Anderson v. Alexander, Warden, 191 Or. 409, 229 P.2d 633, 230 P.2d 770, 29 A.L.R. 2d 1051. Our view here that no rights vested in the convict was specifically approved in Curtis v. Bennett, supra, 351 F. 2d 931.

In the recent case of State v. Rath, 258 Iowa 568, 139 N.W.2d 468, we reaffirmed our position in Pagano v. Bechly, supra, Lint v. Bennett, supra, and Curtis v. Bennett, supra, and held the granting of a bench parole under section 247.20 is a matter of grace and forbearance on the part of the sovereign, that defendant acquired no vested rights thereunder, and that whatever rights defendant acquired by reason of the parole are necessarily limited and controlled by the provisions of section 247.26 of the Code. Therein we pointed out that when the defendant did not object to the suspension of his sentence, it remained unexecuted during the suspension and could only be satisfied by serving the imprisonment imposed, unless remitted by death or some other conclusive authority,

citing Bennett v. Bradley, 216 Iowa 1267, 1271, 249 N.W. 651, 652.

In Lint v. Bennett, supra, 251 Iowa 1193, 104 N.W.2d 564, we held a revocation without notice and hearing valid when it appeared a suspended sentence imposed on conviction for assault with intent to commit a felony was revoked when defendant was subsequently convicted of the crime of operating a motor vehicle while intoxicated. There the suspension was also revoked under the provisions of section 247.26 of the Code. We reaffirm our position in Pagano v. Bechly, supra, and its reasoning, where we said: "In other words, the ultimate outcome of these sections of the statute (247.20 and 247.26) which necessarily become a part of the judgment entry, amounts to this: The court says to the defendant, 'I will suspend your sentence during good behavior, but reserve the power to revoke this suspension of sentence and parole at any time I may see fit without notice to you.'" And when it appeared to the court that defendant had been subsequently convicted of another crime, it rightfully revoked the previous suspension without a hearing or notice. There, as here, plaintiff did not allege the trial court acted arbitrarily, capriciously, or without any information in revoking the parole.

■ It would unduly extend this opinion to discuss the other cases from this jurisdiction which uphold the power of the court to revoke a suspended sentence of one convicted of a crime without prior notice and hearing, and unless it appears the United States Supreme Court has preempted this area of the law and held that one previously convicted and sentenced for a crime and has received a bench parole acquires vested rights of which he cannot be deprived without notice, hearing and legal representation, we shall adhere to that position.

II. The general rule on pardon revocations is stated in 67 C.J.S. Pardons § 23, page 619, as follows:

"A parolee has no constitutional right to a hearing on the question of revoking his parole; and, in the absence of a statutory provision for notice and hearing, a parole may be revoked without such notice and hearing, whether authority to revoke is vested in the governor, the court or judge granting the parole, the board of parole, prison commissioners, or an adult authority."

In 21 Am.Jur.2d, Criminal Law, § 568, p. 536, it is stated: "A hearing is not necessary where probation was accepted under an order reserving an unqualified right of revocation." Also, in § 567, p. 535; "When a statute specifies the procedure to be followed in revoking probation, the law requires no more than compliance with the statute."

In 29 A.L.R.2d 1074, 1077, 1078, a split in authority concerning notice and hearing was recognized and the author noted that if they are requisite to a valid revocation of probation, it was generally considered to be a question of statutory construction. It was there concluded: "The view that there is no constitutional basis for notice and hearing as a requisite to revocation of conditional liberty of a convicted person appears to be the sounder and more logical view."

It should be noted that most courts that have considered the question of whether the Sixth Amendment right to assistance of counsel applies to parole and probation revocation proceedings not involving deferred sentencing in light of the Mempa case have held that it is not applicable. For other cases involving probation revocation, see United States v. Brierly, 288 F. Supp. 401; Holder v. United States, supra, 285 F.Supp. 380; Sammons v. United States, supra, 285 F.Supp. 100; John v. State, (N.D.), 160 N.W.2d 37; Petition of DuBois, (Nev.), 445 P.2d 354. For cases involving the revocation of parole, see Williams v. Patterson, supra, 389 F.2d 374; Rose v. Haskins, supra, 388 F.2d 91; Lawson v. Coiner, supra, 291 F.Supp. 79; Sor-

enson v. Young, supra, 282 F.Supp. 1009; Hutchison v. Patterson, D.C., 267 F.Supp. 433; Johnson v. Stucker, 203 Kan. 253, 453 P.2d 35; People v. Omell, 15 Mich.App. 154, 166 N.W.2d 279; Beal v. Turner, 22 Utah 2d 418, 454 P.2d 624; Riggins v. Rhay, 450 P.2d 806.

We also note even in the federal parole system, where Congress has provided for a hearing in parole revocation proceedings, the hearing is limited and does not approach a judicial proceeding. It is a new and separate proceeding, only semi-criminal at best. Hyser v. Reed, 115 U.S.App. D.C. 254, 318 F.2d 225 (1963).

In Rose v. Haskins, supra, 388 F.2d 91, 95, it is stated: "The Supreme Court of the United States has held that the privilege of a probationer is not a right guaranteed by the Constitution, but 'comes as an act of grace to one convicted of a crime and may be coupled with such conditions in respect of its duration as Congress may impose.' In the absence of statutory provision, the probationer is not entitled to a hearing on revocation", citing Escoe v. Zerbst, 295 U.S. 490, 492, 493, 55 S.Ct. 818, 819, 79 L.Ed. 1566; Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L. Ed. 266, and United States ex rel. Harris v. Ragen, 177 F.2d 303 (7th Cir.).

■ III. Plaintiff maintains under the Fourteenth Amendment of the United States Constitution due process of law extends to notice, hearing and counsel in probation revocation hearings regardless of state court characterization of the proceedings, citing Mempa v. Rhay, supra, 389 U. S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336; Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, and other federal decisions. We have carefully examined these authorities and do not find them applicable here or persuasive of the issue before us. As we have already noted, the federal constitution and the decisions of the Supreme Court only require that counsel be furnished the accused during a critical period in his trial, and none apply to subconviction proceed-

ings. It is not disputed that defendant is entitled to counsel at the time of arrest (Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977), at the time of arraignment (Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114), and at the time of trial (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799), or at the time of the plea by the court (Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398). He is also entitled to counsel at the time of sentencing (Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690), and in taking an appeal (Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891). However, we are cited no Supreme Court authority for the proposition that the person standing convicted and sentenced be entitled to counsel when a suspended sentence is revoked by the court. Nowhere do we find the phrase "at every stage of a criminal proceeding" extended to revocation proceedings subsequent to a suspended sentence.

It is true, one who is given his liberty on condition stands to lose something when the suspension is revoked, but this is not a continuation of his criminal trial. His freedom is a matter of grace, not of right, and he accepts this freedom with the understanding that it may be revoked without cause and that he has no vested rights in that freedom which require protection by counsel.

In Mempa v. Rhay, supra, relied upon by both parties, Mempa was sentenced upon a plea of guilty for "joyriding." The sentence was not then pronounced but was deferred as provided by statute in the State of Washington. On the ground that Mempa had thereafter been involved in a burglary, the State asked revocation of his probation. At the hearing Mempa was not represented by counsel, but acknowledged his involvement in the alleged burglary. The court thereupon revoked the probation and sentenced Mempa to a maximum sentence of ten years in prison. Six years later Mempa sought a writ of habeas corpus in the state courts claiming he had been de-

nied the right to counsel at the proceeding in which his probation had been revoked *and he had been sentenced.* His petition was denied. On appeal to the United States Supreme Court it was held the Sixth Amendment as applied through the due process clause of the Fourteenth Amendment requires that counsel be afforded to a felon defendant in the post-trial proceeding for revocation of his probation and imposition of deferred sentencing.

It was pointed out therein that sentencing is a critical stage in a criminal case and that counsel's presence in necessary to ensure that the conviction and sentence are not based on misinformation or a misreading of court records. In the State of Washington the judge and prosecutor are required to recommend the length of time to be served under an imposed maximum term, and the marshaling of these facts was held to require the aid of counsel. The services of counsel at the *deferred sentencing stage* were deemed necessary to ensure that certain *rights*, such as that of appeal, are reasonably asserted. The court there noted, while ordinarily appeals from a plea of guilty are less frequent than those following a trial on the merits, the incidence of improperly obtaining guilty pleas is not so slight as to be capable of being characterized as de minimus.

It was concluded under the Washington procedure providing for a deferred sentencing coupled with probation provisions, "a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing." It was assumed that counsel appointed for the purpose of the trial or guilty plea would not be unduly burdened by being requested to *follow through* at the deferred sentencing stage of the proceeding.

■ There has been considerable dispute as to the meaning of the words of Mr. Justice Marshall referred to above. In the recent West Virginia case of State ex rel. Riffle v. Thorn, 168 S.E.2d 810, the Supreme Court of that state held the due

process clauses of the constitutions of the United States and of that state guarantee to one indicted for a felony counsel at every stage of his trial, at least from the date of his arraignment until final judgment is entered. It concluded the probation of a petitioner previously sentenced was validly revoked at a summary hearing without the benefit of counsel, and stated it was the view of the majority of that court that Justice Marshall in Mempa, by the language used, meant, "when probation is revoked and the defendant is *for the first time sentenced* to the penitentiary that he must have a lawyer whatever the label that is placed upon the hearing." It was not the view of the majority that Justice Marshall meant to state that a lawyer must be afforded a prisoner in a revocation of probation hearing where the prisoner has theretofore been sentenced with his attorney present. The minority felt there was no valid difference or distinction between the revocation before or after sentence has been imposed, a view that we find unacceptable. It was pointed out by the majority that Justice Marshall was speaking of a part of the trial yet unconcluded, when he said, "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected" and that such a proceeding had been concluded by conviction and sentence imposed. We agree with that view and are satisfied the holding in Mempa relates only to proceedings yet unconcluded in the trial and does not refer to proceedings to revoke a suspension of sentence after it has been pronounced.

All doubt as to the meaning of the phrase in Mempa that "a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing" appears to have been resolved by the Supreme Court itself when it said in McConnell v. Rhay, supra, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2: "As we said in Mempa, 'the necessity for the aid of counsel in marshaling the facts, intro-

ducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent.' * * * The right to counsel *at sentencing* must, therefore, be treated like the right to counsel at other stages of adjudication." (Emphasis supplied.)

■ As further sustaining our view, see Rose v. Haskins, supra, 388 F.2d 91, 95, which considered the constitutional rights the plaintiff claims were violated when his parole was revoked without notice and hearing. It was stated therein: "Under Ohio law the 'trusty' and 'parolee' have privileges, not rights, until they have served their sentences. The Parole Commission may declare a prisoner, who has been paroled, a violator when *in its judgment* he has violated the conditions of his parole. The Commission has exercised its judgment in this case. It declared Rose a parole violator. It was not required to provide a hearing. None was requested." The court then concluded: "The constitutional rights of Rose, which he claims were violated, apply *prior* to conviction. They are not applicable to a convicted felon whose convictions and sentences are valid and unassailable, and whose sentences have not been served. A state prisoner does not have a constitutional right to a hearing on a state parole revocation."

■ IV. Probation in this state is generally a device after conviction and sentence to help the convicted party rehabilitate himself. He has had his day in court and only by grace is he not confined in an institution. Efforts have been made to facilitate the suspension of sentences and probation on good behavior, and to encumber this desirable practice with extended rights to notice, hearing and appointment of counsel before revocation can be exercised would certainly deter the use of this statutory provision and might eliminate the good to be derived by liberal sentence suspensions and probationary grants. The legislature in its wisdom should decide the pros and cons of providing counsel and hearings on probations and suspensions of sentences and the possible effect upon court or board use of such suspensions and grants. Arguments in favor of granting such rights to convicted persons in this area should be addressed to it, not to the court.

V. Having decided the respondent judge did not exceed his proper jurisdiction or otherwise act illegally in revoking plaintiff's probation and suspended sentence on December 10, 1968, the writ of certiorari previously granted must be and it is annulled.

Writ annulled.

All Justices concur except RAWLINGS, MASON and BECKER, JJ., who dissent.

RAWLINGS, Justice (dissenting).

I do not agree with the conclusions reached by the majority or the reasoning upon which they are premised, therefore respectfully dissent.

The question here presented centers primarily upon section 247.26, Code, 1966, which provides: "A suspension of a sentence by the court as herein provided may be revoked at any time, without notice, by the court or judge, and the defendant committed in obedience to such judgment."

Contrary to the view adopted by the majority, I submit this statute, standing alone, does not answer the problem at hand. Rather, it must be viewed and applied in light of the dictates of fair play under present day standards.

I. In Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336, the United States Supreme Court was called upon to determine the matter of defendant's right to counsel at a hearing in connection with revocation of probation attended by a statutorily deferred sentence. Admittedly the Washington statute there involved differs from section 247.26, quoted supra. But

again that alone should not be determinative.

This is to me clearly demonstrated by the fact that in Mempa v. Rhay, at 389 U.S. 137, 88 S.Ct. 258, the court made this informative statement: "All we decide here is that a lawyer must be afforded at this proceeding *whether it be labeled a revocation of probation or a deferred sentencing.*" (Emphasis supplied). The majority, in the interpretation of that statement, agrees with the view expressed in the case of State ex rel. Riffle v. Thorn, W.Va., 168 S.E.2d 810, 813, where the court held, the disputed language means: "* * * when probation is revoked and the defendant is *for the first time sentenced* to the penitentiary that he must have a lawyer whatever the label that is placed upon the hearing."

Despite this holding, I find no basis upon which to differentiate between revocation of probation, be it either subsequent to or simultaneously with imposition of sentence. In both instances the petitioner's liberty is involved.

In Hewett v. North Carolina, (4 Cir.), 415 F.2d 1316, opinion issued August 26, 1969, the court, when confronted with the subject at hand, had this to say: "We have little doubt that the revocation of probation is a stage of criminal proceedings. Even if a new sentence is not imposed, it is the event which makes operative the loss of liberty. * * * Our inquiry is not concerned with whether North Carolina's procedure is a carbon copy of that employed by the State of Washington.

"* * * At stake in a revocation of probation proceeding is individual liberty, and the substantiality of this right may not be disputed. We are not impressed by the argument that probation is a 'mere' privilege, or a matter of grace, rather than a right and that, therefore, various constitutional mandates, including the right to counsel, should be held to be inapplicable. * * *

"* * *

"We, therefore, conclude that counsel must be appointed for indigents in all revocation of probation proceedings conducted under the law of North Carolina, or the law of any other jurisdiction where the procedure similarly affects the substantial rights of the individual."

Also, the court stated in Perry v. Williard, 247 Or. 145, 427 P.2d 1020, 1022: "The conceptual distinctions between a summary hearing before sentence is imposed, * * * and one after sentence is imposed are not operationally important insofar as such distinctions bear upon the trustworthiness and fairness of the decision to be made on disputed questions of fact concerning a probationer's conduct. In either case, a person about to be deprived of his liberty ought to have a meaningful opportunity to disprove the charges against him."

It is generally understood probation is granted a defendant in order that he may prove himself. To that end he must agree to specified standards of conduct, and continued liberty is dependent upon compliance with them. The freedom he enjoys is limited and subject to revocation for violation of the prescribed conditions. The probationer promises to comply with stated requirements, and the court extends to him an implied promise that if he makes good his conditional liberty will continue. This promise should not be peremptorily brushed aside.

Fundamentally, personal liberty is one of the most sacred and valuable rights a citizen may have. Accordingly, one on probation should not be deprived, even of his conditional freedom upon possible false accusations, whim or caprice. So, where a defendant is granted suspension of sentence during good behavior he should have the right to rely upon that understanding so long as his conduct measures up to prescribed standards.

A person under probation should at least be accorded some minimal procedural safeguards to the end his liberty be not arbi-

trarily taken from him. He should be first given timely notice regarding claimed misconduct on his part which might subject him to revocation of probation.

This does not mean formal pleadings need be employed. If one on conditional release admits to the court his failure to "measure up" no other proceedings would be necessary. Otherwise a meaningful hearing should be conducted. In such instance the defendant is entitled to know the charges made against him, have benefit of counsel, give account of himself, have the privilege of presenting statements in his own behalf, and be granted the right to question those complaining of misconduct on his part. Of course, the state, being equally interested, should be permitted to participate fully in any such hearing.

Neither does it mean proof of guilt beyond a reasonable doubt need be established. Rather, if the evidence presented or showing made is of such nature as to induce a reasonable and impartial mind to believe the defendant has in any material respect violated the conditions of his probation, it would be sufficient. See State v. Brusenhan, 78 N.M. 764, 438 P.2d 174, 176–177.

Referring again to Mempa v. Rhay, supra, the court there also said, loc. cit., 389 U.S. 134, 88 S.Ct. 257: "* * * appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected."

A fair analysis of the words "criminal proceeding" and "substantial rights" to me affords no reasonable or plausible basis upon which to conclude the holding in Mempa is limited to actual trial. Even though probation be characterized as "a matter of grace" it still remains, when it is revoked the probationer's substantial rights are materially affected. In support hereof see Hewett v. North Carolina, supra.

Also in point is Blea v. Cox, 75 N.M. 265, 403 P.2d 701, 702–703, where the court said: "As long ago as 1917, in Ex parte Lucero, 23 N.M. 433, 168 P. 713, L.R.A. 1918C, 549, this court passed on the necessity of preserving constitutional guaranties in hearings seeking to revoke the suspension of a sentence. The record in that case disclosed that the defendant was not present in person or by counsel when suspension of his sentence was revoked and commitment issued. We quote from the opinion in that case:

" 'Upon principle it would seem that due process of law would require notice and opportunity to be heard before a defendant can be committed under suspended sentence. The suspension of the execution of the sentence gives to the defendant a valuable right. It gives to him the right of personal liberty, which is one of the highest rights of citizenship. This right cannot be taken from him without notice and opportunity to be heard without invading his constitutional rights.'

"* * *

"Aside from the right guaranteed in the Sixth Amendment to the Federal Constitution to be represented by counsel at all critical stages of a criminal proceeding, which has been held to be applicable likewise in state prosecutions by virtue of the Fourteenth Amendment, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, * * *.

"As already noted in the quotation from Ex parte Lucero, supra, the taking from a man of his right to liberty being enjoyed under a suspended sentence amounts to the denying to him of one of his highest rights. This may not be done ex parte and without notice and hearing. We see in the proceeding for revocation of a suspension the same critical or crucial elements present as in other hearings wherein the right to counsel is guaranteed, such as the preliminary hearing, arraignment and trial. The need for and right to be represented by counsel, unless intelligently and knowingly waived, is as much a requisite in a hearing seeking revocation of a suspended

sentence as in the other mentioned stages of the proceedings. Compare United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224." See also Fleenor v. Hammond, (6 Cir.), 116 F.2d 982, 132 A. L.R. 1241.

Supportive of the foregoing views is this comment in State ex rel. Fulton v. Scheetz, Iowa, 166 N.W.2d 874, 887: "It is axiomatic that where liberty is to be restrained there must be due process * * *."

In light of the foregoing I now ask: Where, as here, defendant's liberty is at stake, is he not entitled to benefit of due process—to notice and a meaningful probation revocation hearing?

It is to me apparent due process of law is here involved.

II. By the same token I submit that at all stages of any such hearing the defendant is entitled to benefit of competent counsel.

With more than a minimal degree of logic the court held, in Glenn v. Reed, 110 U.S.App.D.C. 85, 289 F.2d 462, 463, a hearing which resulted in revocation of probation was invalid where defendant neither had nor was offered assistance of counsel.

And, in Perry v. Williard, supra, is found this pertinent statement, loc. cit., 427 P.2d 1022: "We now hold that counsel is not only desirable but is so essential to a fair and trustworthy hearing that due process of law when liberty is at stake includes a right to counsel."

Commonwealth v. Tinson, 433 Pa. 328, 249 A.2d 549, deals with the right of a defendant to representation by counsel in a parole board recommitment hearing. In holding the parolee then constitutionally entitled to assistance of an attorney, the court found no basis for differentiation between revocation of probation before or after sentencing with this marked comment, page 551, 249 A.2d: "We are helped not at all in determining appellant's constitutional rights by attaching artificial labels to describe the proceeding before us."

See also Hewett v. North Carolina, and Blea v. Cox, both supra.

III. Additional authorities supporting the views expressed supra, are: Application of Gault, 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527; Gideon v. Wainwright, 372 U.S. 335, 344–345, 83 S.Ct. 792, 796–797, 9 L.Ed.2d 799; Douglas v. People of State of California, 372 U.S. 353, 356–358, 83 S.Ct. 814, 816–817, 9 L.Ed.2d 811; Griffin v. People of the State of Illinois, 351 U.S. 12, 16–18, 76 S.Ct. 585, 589–590, 100 L.Ed. 891; McNeely v. State, Fla. App., 186 So.2d 520, 522–523; Cross v. Huff, 208 Ga. 392, 67 S.E.2d 124, 127, and Mason v. Cochran, 209 Miss. 163, 46 So.2d 106, 108.

I would reverse and remand with instructions, that trial court set aside the order heretofore entered revoking probation, timely notice be given defendant relative to revocation of probation, hearing be accordingly held, defendant be allowed benefit of counsel at all stages thereof, and if this be not done within 60 days then the writ to issue.

MASON and BECKER, JJ., join in this dissent.