344 So.2d 630 (1977)
Richard L. WHEELER, Appellant,
v.
STATE of Florida, Appellee.
No. 76-961.
District Court of Appeal of Florida, Second District.
April 13, 1977.
*631 Robert A. Farrance of Kearney & Mulock, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
Appellant contends the trial court erred in revoking his probation based upon hearsay testimony and his own out of court admissions. We disagree and affirm.
Appellant was charged with making a lewd, lascivious or indecent assault upon a minor child. He pled nolo contendere and was placed on probation for three years on December 21, 1973. He moved to Bexar County, Texas, where he was placed under supervision of local probation authorities effective February 20, 1975. In April 1976, his Texas probation officer forwarded an affidavit to the probation authorities in Manatee County, Florida, alleging a violation of probation based on appellant's failure to file reports for the months of March, May, June, July, August and September 1975, and January and February of 1976. On this basis the Manatee County probation officer signed an affidavit and the court issued a warrant of violation.
At a hearing on revocation of appellant's probation, the Texas probation officer's affidavit was admitted into evidence over appellant's objection. Additionally, the court received testimony from the Manatee County probation officer who stated that she had reviewed the alleged violations with appellant and that he had admitted the Texas report was correct. Appellant testified in his own behalf, claiming there was some confusion about requirements for filing the reports since he had more than one probation officer. He also claimed he had been permitted to file late reports. The trial court found appellant had committed the violation, revoked probation and sentenced him to prison for fourteen months.
The condition of probation violated required appellant to make a full and truthful report to his probation supervisor not later than the fifth day of each month. This condition is common to almost every probation. See Section 948.03, Florida Statutes.
Under due process of law, the appellant was entitled to a hearing on the issue of whether his probation was to be revoked. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). However, the *632 volume of appeals from revocations indicates the need for us to restate some of the basic evidentiary standards to be observed in these hearings.
A revocation hearing must afford a probationer a fair opportunity to be heard on the question of whether he has violated the terms of his probation. Bowen v. State, 229 So.2d 272 (Fla.2d DCA 1969). The proceedings may be conducted by the court on a relatively informal basis and need not follow the requirements of a criminal trial. Ibey v. State, 308 So.2d 565 (Fla.2d DCA 1975). The trial judge is not required to follow the strict rules of evidence and may consider such affidavits and other documents as are relevant, even though such evidence may not be admissible in a criminal trial. The court must be satisfied from the greater weight of the evidence that a substantial violation of probation has occurred. Singletary v. State, 290 So.2d 116 (Fla.4th DCA 1974). Florida courts have held that while hearsay is admissible in revocation proceedings, a defendant's probation cannot be revoked solely on the basis of hearsay evidence. White v. State, 301 So.2d 464 (Fla.4th DCA 1974); Brown v. State, 338 So.2d 573 (Fla.2d DCA 1976); Tuff v. State, 338 So.2d 1335 (Fla.2d DCA 1976); Couch v. State, 341 So.2d 285 (Fla.2d DCA 1977) opinion filed January 19, 1977. Some of the more significant constitutional issues in respect to admissibility of evidence have been clarified by recent decisions of the Florida Supreme Court.[1]
Once the affidavit from the Texas probation supervisor was corroborated by appellant's own admissions, there was a sufficient evidentiary basis for the trial judge to conclude, as he did, that appellant had substantially violated his probation. Although we said in McNeely v. State, 186 So.2d 520 (Fla.2d DCA 1966), that some evidence beyond the defendant's admission should be introduced to justify revocation, we think the probation supervisor's affidavit was sufficient to meet that requirement.
Finally, having noted a significant decrease in the number of persons placed on probation in the recent past,[2] we have emphasized the informal character of revocation hearings. Trial judges who grant defendants "judicial grace" by placing them on probation should not be faced with a second criminal trial on the issue of whether a defendant has violated the conditions of that probation. Otherwise, we fear the trial courts may hesitate to utilize probation, where appropriate, as a viable alternative to incarceration.
Affirmed.
BOARDMAN, C.J., and GRIMES, J., concur.
NOTES
[1] See, e.g., Croteau v. State, 334 So.2d 577 (Fla. 1976), in which the Supreme Court held that evidence obtained in violation of the Fourth Amendment may be admissible in a revocation hearing even though it must be excluded from a criminal trial; and State v. Heath, 343 So.2d 13 (Fla. 1977), opinion filed February 10, 1977, in which the court held that by accepting the terms of probation a probationer waives his Fifth Amendment privilege against self-incrimination with regard to providing necessary information to his supervisor concerning his living and working conditions and activities.
[2] See Department of Offender Rehabilitation, PRELIMINARY OVERVIEW of WORKLOAD UNIT TASK FORCE REPORT (October 18, 1976), P. 2:

In recent years there has been an increasing use of incarceration as a punishment alternative.
* * * * * *
For practically all offenses there has been a significant increase in the number of new admissions to prison. At the same time, there has been a significant decrease in the number of persons placed on probation for the same offenses.
The change in probation rate for 1975 alone, resulted in additional 2,246 inmates. This will cost the state approximately 60 million dollars in fixed capital outlay and operating costs.