454 P.2d 624

**Floyd Dwayne BEAL, Plaintiff,**
**v.**
**John W. TURNER, Warden, Utah State**
**Prison, Defendant.**
No. 11595.

Supreme Court of Utah.
May 1, 1969.

Gerald Kinghorn, Salt Lake City, for plaintiff.

Vernon B. Romney, Salt Lake City, Atty. Gen., for defendant.

ELLETT, Justice:

This matter is before us on an application for a writ of habeas corpus. The plaintiff was originally committed to the Utah State Prison after conviction of felony. The defendant is the warden and has custody of the prison inmates subject to the orders of the Board of Corrections.

In its efforts to rehabilitate its prison population, the Board of Pardons seeks constantly to afford early releases to all inmates who show signs of being likely to respond to supervision outside of the prison walls. Certain conditions are imposed upon each parolee, and a written promise is given by him to comply with those conditions before he is permitted to leave the prison compound.

When a prisoner is given parole status, he is assigned to a professional parole officer, who assists him in securing a place to live, obtaining employment, and avoiding situations which might justify the termination of his parole status.

This plaintiff was placed on parole by the Board of Pardons but was subsequently returned to prison after a hearing at which he was required to plead to charges of violating his conditions of parole. Because he was not afforded counsel at that hearing, he now claims a violation of his constitutional rights under Article I, Section 7, of the Utah Constitution, which provides that "no person shall be deprived of life, liberty or property, without due process of law." He does not claim that he is innocent of parole violations. He simply says that he should have had a lawyer at the hearing.

We hold that there is no lack of due process of law in the failure to furnish counsel to a parolee at a hearing on revocation of his parole.

Our applicable statutes are clear and cannot be misunderstood. They are as follows:

77-62-16. * * *. All prisoners released on parole, pursuant to the provisions hereof, shall remain in the legal

custody and under the control of the chief adult parole and adult probation officer, and shall be subject at any time to be retaken to the institution from which he was paroled until such time as his sentence is terminated. Full power to retake and reimprison any convict upon parole is conferred upon the board of pardons, whose written order certified by its secretary shall be sufficient warrant for all officers authorized to make arrests, or other persons named therein, to return to actual custody any such prisoner. The board of pardons shall permit any offender reimprisoned for parole violation to be heard at its next regular meeting.

77–62–17. Termination of parole by board. The board of pardons is empowered to terminate, at any time, the parole of any offender.

■ The plaintiff further claims that his right to counsel is guaranteed by the Fifth and 14th Amendments to the Constitution of the United States[1] and relies on a decision of a Federal District Court as his authority. This court does not accept the rulings of Federal District Courts as authority for the law of this state.

A case which is sometimes cited as authority for the principle that the presence of an attorney is required at revocation hearings is that of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). This case is no authority for holding that a *parolee* is entitled to counsel because it involved the revocation of the probation of a defendant who had entered a plea of guilty and who was then placed on probation. In our opinion that case is not even any authority for holding that counsel is required at a hearing for revocation of probation. We find no particular fault with the Mempa case for what it did actually decide when considered in the light of the Washington statutes and procedures involved therein. Se 40 U.Colo. L.Rev. 617 (1968). The defendant, Mempa, had entered a plea of guilty to a felony charge, and under Washington Law (R.C.W. 9.95.200 and 9.95.210) sentence was deferred, and he was placed on probation. He had counsel at the time his plea was entered to the charge against him. Also, under the state law the judge had to impose upon the defendant the maximum sentence provided by law and then make his recommendation to the Board of Prison Terms and Paroles as to the amount of time to be served. Until sentence was imposed, the case was still pending in the district court, and it would seem that counsel for a defendant ought to be present when the sentence is imposed. The recommendation of the judge as to time to be served might be in-

1. The author of this opinion paid his respects to the right to counsel and to the 14th Amendment in his lonesome opinion in Dyett v. Turner, 20 Utah 2d 403, 439 P.2d 266 (1968).

fluenced by what counsel would have to say in that regard.

Furthermore, under Washington law a plea of guilty may be withdrawn at any time before sentence is imposed. Had counsel been present, he could have advised the defendant to withdraw the guilty plea and go to trial on the original charge.

Another reason why counsel should have been present in the Mempa case is that an appeal could not have been taken prior to sentence[2] and counsel would, therefore, be advised as to when the time for taking an appeal would commence.

■■ When a defendant has been tried and convicted and sentenced, and no appeal or other proceedings are pending to test the propriety of the guilty verdict, then the critical stages of the proceedings are over, and the defendant has no constitutional rights to be placed on probation or parole. His rehabilitation is the responsibility of professional men, and the manner in which it is accomplished must be a matter of discretion. His being placed on probation or parole is merely a matter of grace given because of confidence reposed in his promises to refrain from criminal acts and to be a useful law-abiding citizen. When a probationer or parolee violates the confidence reposed in him, he ought not to be heard to cry when he is simply given the just desserts to which he was originally entitled.

The Board of Pardons and the men in the Adult Probation and Parole Department are striving in a professional way to rehabilitate adjudicated criminals, so that these criminals may take their place in a law-abiding society. To accomplish this objective, the Board of Pardons and the Adult Probation and Parole Department must have leeway in taking chances and enlarging the ambit of a promising prisoner, and when the confidence which they had in the parolee is seen to be misplaced, then they must have the power and the right to return the prisoner to the custody in which he was before the act of grace was accorded him. A lawyer in a matter of disciplinary proceedings such as a hearing on parole revocation would be about as useful to rehabilitation of the parolee as would be a lawyer advising an errant child when its parents were undertaking to discipline it.

While the plaintiff herein cited as his authority for release the opinion of a Federal District Court, he failed to advise us that the Circuit Court of Appeals had already passed upon the question now before us. In the case of Earnest v. Willingham, 406 F.2d 681 (10th Cir.1969), it was said:

We begin with the long established proposition that early release (be it mandatory release, parole or probation) and revocation hearings are matters of legislative grace not constitutionally mandat-

2. See State v. Farmer, 39 Wash.2d 675, 237 P.2d 734 (1951).

ed. Escoe v. Zerbst, 295 U.S. 490, 55 S. Ct. 818, 79 L.Ed. 1566 (1935). This being so the courts have been virtually unanimous in holding that there is no constitutional right to retained or appointed counsel at a parole revocation hearing. [Citations omitted.] Nor does the most recent case of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) require a different result. As we observed in Williams v. Patterson, supra, 389 F.2d 374, p. 375, Mempa dealt with the right to "counsel 'at the time of sentencing where the sentencing has been deferred subject to probation,'" none of which is here involved.

\* \* \* \* \* \*

Despite disagreement among the circuits, we are satisfied that if we were only confronted with the construction of the statutory "opportunity to appear" we would have no difficulty affirming the District Court in light of our position in Lavendera v. Taylor, supra, 347 F.2d 989 adopting Judge Goodrich's view in Washington v. Hagan, supra, 287 F.2d 332 p. 334. As he expressed it, for the Third Circuit: "The period of contentious litigation is over when a man accused of crime is tried, defended, sentenced and, if he wishes, has gone through the process of appeal. Now the problem becomes one of an attempt at rehabilitation. The progress of that attempt must be measured, not by legal rules, but by the judgment of those who make it their professional business. So long as that judgment is fairly and honestly exercised we think there is no place for lawyer representation and lawyer opposition in the matter of revocation of parole."

Other cases holding to the same effect are Eason v. Dickson, 390 F.2d 585 (9th Cir. 1968), cert. denied, 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968); Williams v. Patterson, 389 F.2d 374 (10th Cir. 1968); Rose v. Haskins, 388 F.2d 91 (6th Cir. 1968); People v. Jones, 263 Cal.App. 2d 818, 70 Cal.Rptr. 13 (1968); John v. State, 160 N.W.2d 37 (N.D.1968); Riggins v. Rhay, 75 Wash.Dec.2d 280, 450 P.2d 806 (1969); Smith v. Warden, Nevada State Prison, 450 P.2d 356 (Nev.1969); Petition of DuBois, 445 P.2d 354 (Nev. 1968)

One further matter should be noted. Certain cases have held that where a rich man has a right to counsel, it is a denial of due process to refuse to furnish a poor man a lawyer for free.

Our legislature in 1965 enacted Chapter 171, Laws of Utah, which requires counties to provide counsel for indigent defendants, and Section 1 thereof reads:

The Legislature of the State of Utah hereby declares the following to be mini-

mum standards to be provided by each county for the defense of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts and various administrative bodies of the State of Utah:

\*   \*   \*   \*   \*   \*

(6) Include the taking of appeals and the prosecuting of other remedies, before or after a conviction, considered by the defending counsel to be in the interest of justice.

■■ We hold that the intention of the legislature in passing this statute was to limit the right of counsel in matters subsequent to conviction and sentence to appeals, applications for writs of habeas corpus, and for writs of coram nobis—matters affecting guilt or innocence and the fairness of the trials by which those ends are accomplished. It does not refer to revocation of paroles.[3]

The application for the writ of habeas corpus is denied.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, J., does not participate herein.

---

3. Section 77-64-3, U.C.A.1953 (Pocket Parts) provides that it shall be the duty of counsel to represent an indigent defendant before the Board of Pardons. It is noted that the purpose of this section is to impose a duty on the lawyer if the Board of pardons permits counsel to appear; but it is not meant to, and does not enlarge or create any rights not theretofore possessed by the prisoner.