■ THE PEOPLE OF THE STATE OF NEW YORK ex rel. BERNARD SMITH, Appellant, v. JOHN T. DEEGAN, as Warden of Sing Sing Prison, Respondent.— In a habeas corpus proceeding, the appeal is from a judgment of the Supreme Court, Westchester County, entered October 11, 1968, which dismissed the writ

Judgment affirmed, without costs. In our opinion, section 218 of the Correction Law is not unconstitutional insofar as it denies a parolee the right of counsel at a hearing for revocation of his parole. The Federal courts have consistently held that parole is a matter of grace and that such a hearing does not involve constitutional due process, neither the assistance of counsel nor even a hearing being constitutionally mandated (see, e.g., *Eason* v. *Dickson*, 390 F. 2d 585; *Williams* v. *Patterson*, 389 F. 2d 374; *Rose* v. *Haskins*, 388 F. 2d 91, cert. den. 392 U. S. 946; *Williams* v. *Dunbar*, 377 F. 2d 505); and the Supreme Court has yet to rule otherwise. The oft-cited case of *Mempa* v. *Rhay* (389 U. S. 128) is inapposite as it relates only to the right of counsel upon sentencing by the court (see *Matter of Briguglio* v. *New York State Bd. of Parole*, 24 N Y 2d 21, 25). Nor is there anything inherent in the nature of our parole revocation procedure which requires an adversary proceeding or even renders it appropriate. The Board of Parole is charged with the duty of continuing supervision over parolees and of determining whether the conditions of parole imposed are being violated (Correction Law, § 210). If the parole officer has reasonable cause to believe that the parolee "has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect," he is required to report the same to a member of the Parole Board who may thereupon issue a warrant for the parolee's arrest (Correction Law, § 216) and the Parole Board shall declare him delinquent if it has reasonable cause to believe he has violated his parole (Correction Law, § 218). Section 218 further provides that upon the parolee's return to prison the board "shall * * * give such parole violator an opportunity to appear personally, *but not through counsel or others*, * * * and explain the charges made against him" (italics supplied) and that thereafter the board "may, if it sees fit, require such prisoner to serve out in prison * * * the balance of the maximum term for which he was originally sentenced". The actual determination of the question of revocation is based upon a written violation report by the parole officer and the parolee's own statements, as well as upon consideration of more intangible factors. Thus, for example, the board's attention will be directed to such factors as the effectiveness of the parole supervision actually received; the possible existence of other and untried methods of treatment to alleviate the situation; the parolee's adjustment to, and attitude toward, parole supervision; and, of course, the important element of community risk (see *People ex rel. Johnson* v. *Follette*, 58 Misc 2d 474, 478). Furthermore, the Parole Board's determination of the question of revocation is not subject to judicial review. Its discretion is absolute on the merits so long as it violates no positive statutory duty (*Matter of Hines* v. *State Bd. of Parole*, 293 N. Y. 254, 257; *People ex rel. Natoli* v. *Lewis*, 287 N. Y. 478, 481; *People ex rel. Spinney* v. *Fay*, 23 A D 2d 701; *Matter of Mummiami* v. *New York State Bd. of Parole*, 5 A D 2d 923, cert. den. 362 U. S. 953). In light of the foregoing, we agree that the parole revocation hearing is neither a "trial" nor a "judicial proceeding" within the meaning of the Federal or State Constitutions (see *People* v. *Simons*, 22 N Y 2d 533, which held that a parole warrant, properly issued for a violation of parole, did not commence a "judicial proceeding"). In truth, "It is an administrative proceeding, not judicially reviewable, where a purely discretionary determination concerning the withdrawal of a privilege, not a right, is made" (*People ex rel. Johnson* v. *Follette, supra,* p. 480). The discretionary nature of the board's determination and the special expertise the board brings to the ultimate question of whether the parole violator still constitutes a good parole risk despite his transgression render an adversary-type proceeding unwarranted and completely inappropriate. In this respect, the procedure upon parole revocation differs very little from that on parole release;

and the Court of Appeals has recently held that the prospective parolee is not entitled to counsel upon his parole eligibility hearing (*Matter of Briguglio* v. *New York State Bd. of Parole*, 24 N Y 2d 21, *supra*). Involved here is not judicial power, but State prison discipline. The Parole Board having exclusive authority over execution of the sentence (be it served within or without the prison walls), its revocation of the privilege of parole, without a full-blown judicial-type proceeding, does not constitute a denial of due process. We have also examined appellant's claim as to an allegedly erroneous computation of his maximum release date and find it to be without merit. Beldock, P. J., Christ, Brennan and Martuscello, JJ., concur; Hopkins, J., concurs in result, with the following memorandum: I address myself only to the question of appellant's claim of a right to counsel at the hearing held to determine whether his parole should be revoked. Appellant clearly had no statutory right; the Legislature has expressly denied it (Correction Law, § 218). Nor does the State constitutional provision, entitling any person accused of crime to appear and defend with counsel "in any trial in any court" (N. Y. Const., art. I, § 6), apply, for appellant had already been convicted of a crime before his original incarceration and was not subject at the revocation hearing to conviction for another crime. For the same reason, the Sixth Amendment of the Federal Constitution has no force here (cf. *Hannah* v. *Larche*, 363 U. S. 420, 440, n. 16). The question remains whether constitutional guarantees of due process confer the right to counsel (N. Y. Const., art. I, § 1; U. S. Const., 14th Amdt.). I do not think that appellant's claim of right can be dismissed merely on the ground that he asserted it in a hearing before an administrative body rather than in a judicial proceeding, for due process protects against all State action, regardless of its form or government source (*Stuart* v. *Palmer*, 74 N. Y. 183, 190–191). Though the conditions of parole limited appellant's freedom, the revocation of parole removed his freedom. It is true that it has been said that no change in a parolee's freedom is effected by such revocation, because in a legal sense he had remained in constructive custody from the time he was released on parole (Correction Law, § 213; *People ex rel. Natoli* v. *Lewis*, 287 N. Y. 478, 482). But it does not seem to me that an abstraction materially aids us in measuring due process, when the end result replaces even the limited freedom of an individual in the community with prison confinement. Neither am I persuaded that the components of due process have no relevance on the ground that the revocation is an extension of prison discipline. The simple fact is that whatever might be the misbehavior of the parolee which becomes the stimulus for the hearing, that misbehavior occurred outside the prison walls while he was within the community. On the other hand, appellant cannot fairly urge any analogy to the right of counsel enjoyed by a defendant who is alleged to have violated the probation imposed by a court (*People* v. *Hamilton*, 26 A D 2d 134). That right derives from the constitutional provisions of which note has already been taken — the Sixth Amendment of the Federal Constitution and section 6 of article I of the State Constitution; a trial includes the sentence which is imposed on a defendant; and a defendant has the advantage of certain benefits at the time of sentence, if he desires to invoke them (Code Crim. Pro., §§ 467, 469, 480). The court may also impose a sentence other than the one suspended, upon the revocation of probation (Code Crim. Pro., § 935). None of these advantages or disadvantages befalls a parolee. No one element of State action determines the structure of due process. The content of due process may differ as the processes involved themselves differ. " Increasingly in modern jurisprudence, the term has come to represent a realistic and reasonable evaluation of the respective interests of plaintiffs, defendants and the state under the circumstances

of the particular case" (*Dobkin* v. *Chapman,* 21 N Y 2d 490, 502). Hence, the inquiry is focused on the nature of the right claimed, the purpose of the proceeding, and the possible burden on that proceeding by the enforcement of the right (cf. *Hannah* v. *Larche,* 363 U. S. 420, 442, *supra*). The interests of the individual and the interests of the State must be accommodated in the light of the process which the State has set in motion against the individual. Here, these respective components may be described thus: 1. The right to counsel is a valuable advantage to the individual, for it affords an objective and informed judgment to one in difficulty. It is not, however, an automatic adjunct of due process (cf. *Matter of Groban,* 352 U. S. 330; *Niznik* v. *United States,* 173 F. 2d 328, cert. den. 337 U. S. 925). To deny it requires a showing of unusual and exigent circumstances (cf. Representation by Counsel in Administrative Proceedings, 58 Col. L. Rev. 395, 399–400). 2. The revocation proceeding here considered is aimed at one accused of violating the conditions of his parole under which he was permitted to return to the community after conviction and sentence to imprisonment for the commission of a crime. The conditions of the parole, in part expressly described in the statute, are given in writing to the parolee (Correction Law, § 215) at the time of his release. At the time of the hearing before the Parole Board the charges constituting the claimed violation are explained to the parolee (Correction Law, § 218). One of the violations of parole most frequently charged is the commission of a second crime by the parolee while on parole (cf. Correction Law, § 219). It is implicit in this process that the parolee shall have the opportunity to speak and to state his position at the hearing. 3. The potential burden which would be imposed on the proceeding by the enforcement of the right to counsel is, first, the delay in the disposition of the charges arising from the appearance of counsel and, second, the assignment of counsel for indigent parolees. The first burden is perhaps more of an annoyance than substantial, although the hearings, it must be noted, are usually held in State prisons (Correction Law, § 218), in some instances at locations inconvenient for counsel. Adjournments to suit counsel must be expected and calendar delay will undoubtedly ensue. The delay has the effect of leaving the parolee in an uncertain status — an effect undesirable from the point of view of both the parolee and the Parole Board. The second burden could conceivably thrust upon the Parole Board (or the State) a large financial responsibility and administrative complications. No present machinery exists for the assignment and payment of counsel by the Parole Board, which is not adapted, as a court inherently is, to assume the task of making counsel available to the parolee. Legislation would unquestionably be needed to accomplish a practical and effective system for the representation of indigent parolees, who would constitute a great majority of the cases. In appraising these factors, it is necessary to take account of whether counsel's presence at the hearing would probably achieve a result favorable to the parolee. Experience suggests that it would not. At one time a jury trial was required for the revocation of parole (cf. *People ex rel. Kurzynski* v. *Hunt,* 250 App. Div. 378, cert. den. 303 U. S. 654); in 1930 the present procedure was substituted (L. 1930, ch. 38). Even under the statute directing a jury trial, it was recognized that a trial was no more than an idle formality when the violation of parole charged was the commission of another crime during release on parole (*People ex rel. Rothermel* v. *Murphy,* 274 N. Y. 281). This, indeed, was the posture in which appellant found himself at the hearing at which he asked the aid of counsel. In his case the commission of the second crime had already been established by his conviction and it is highly unlikely that appellant could have received any help from the assign-

ment. of counsel. As this cause for revocation of parole, i.e., the conviction of a crime during release, composes the great majority of the cases before the Parole Board, the need of counsel as a concomitant to due process must be regarded as tenuous, and the price to the State extremely high. In short, the benefit to the individual bears little comparison to the detriment to the State. It follows that appellant's right to due process was not infringed under the circumstances of his case by the denial of counsel. Other causes for revocation of parole do exist in which the facts may not be so clear-cut and counsel might give effective aid to the parolee. Even in such restricted number of cases, the courts have exercised an oversight when apparent injustice to the parolee is shown. Thus, an error by the Parole Board in computing the expiration date of a sentence has been corrected (*Matter of Browne* v. *New York State Bd. of Parole,* 10 N Y 2d 116); and the Parole Board can be prevented from violating a mandate of the law (cf. *Matter of Hines* v. *State Bd. of Parole,* 293 N. Y. 254, 257). The ancient writ of habeas corpus has been used to review facts underlying the jurisdiction of the Parole Board (*People ex rel. Marvin* v. *McDonnell,* 280 App. Div. 367). Appropriate recourse will be granted on behalf of a parolee against the imposition of an illegal condition of parole (*People ex rel. Ingenito* v. *Warden,* 267 App. Div. 295, 300, affd. 293 N. Y. 803). Finally, the teaching of *People ex rel. Keitt* v. *McMahon* (18 N Y 2d 257) is that habeas corpus lies to test the constitutional and statutory rights of a prisoner when no other avenue of relief is open. The confluence of these considerations justified the legislative treatment of a revocation hearing without the aid of counsel made available to the parolee. The chance of an injustice through mistake or arbitrary decision in this context appears remote in the light of the expense and burden of administrative mechanism required to afford counsel. For these reasons I vote to affirm.