WARREN *v.* PAROLE BOARD

OPINION OF THE COURT

1. PARDON AND PAROLE—REVOCATION OF PAROLE—RIGHT TO COUNSEL
   —INDIGENTS.

   An indigent parolee is entitled to have counsel appointed at
   state expense to represent him at a parole revocation hearing
   where there is a factual dispute as to whether he violated
   his parole since to refuse to assign counsel to an indigent
   parolee denies to him equal protection of the laws when, by
   statute, a parolee who can afford to retain counsel may hire
   an attorney to defend him at a violation of parole hearing
   (MCLA § 791.240).

2. PARDON AND PAROLE—REVOCATION OF PAROLE—RIGHT TO COUNSEL
   —INDIGENTS.

   Refusal of parole board to appoint counsel for an indigent
   parolee to represent him at violation of parole hearing denied
   to him equal protection of the laws and the Court of Appeals,
   to protect the constitutional guarantees of that parolee, orders
   the parole board to provide him with counsel and schedule
   a new hearing on the parole violation charges within 30 days,
   unless the attorney general shall file an alternative proposal
   for the implementation of its decision (US Const, Am 14).

DISSENTING OPINION

HOLBROOK, J.

3. PARDON AND PAROLE—REVOCATION OF PAROLE.

   *A prisoner is not entitled to discharge but rather to a recon-
   sideration by the parole board of its prior revocatory action
   where an appellate court reverses a conviction which formed*

---

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 39 Am Jur, Pardon, Reprieve and Amnesty § 81 *et seq.*
   Right to notice and hearing before revocation of suspension of
   sentence, parole, conditional pardon, or probation.   29 ALR2d
   1074.

*a part of the charged basis for parole revocation and where the prisoner again admitted parole violations other than the reversed conviction at his rehearing, revocation of his parole was not error since the parole board, by statute, has discretion in exercising its power to amend, revise, modify, or rescind an order of parole (MCLA § 791.236).*

4. Pardon and Parole—Revocation of Parole—Right to Counsel—Due Process—Indigents.

*Due process of law does not require that an indigent parolee have appointed counsel at a hearing on revocation of his parole because such a hearing is a statutory administrative hearing and is not a judicial proceeding.*

5. Pardon and Parole—Revocation of Parole—Constitutional Law—Right to Counsel—Equal Protection—Indigents.

*Equal protection of the law does not require that an indigent parolee be given appointed counsel at hearing on revocation of his parole simply because a non-indigent parolee, by statute, is permitted to be represented by counsel at his own expense since the right to be represented by counsel at such a hearing is statutory, not constitutional.*

6. Pardon and Parole—Good Time—Computation.

*Plaintiff prisoner, whose parole had been revoked, was not entitled to a discharge because of expiration of sentence where it was obvious that even if he received the maximum allowance of good time permitted by statute, he could not possibly have to his credit sufficient good time to reduce his maximum sentence for a present discharge, that computations by the department of corrections showed plaintiff's maximum expiration dates to be later than he contended, depending upon the allowance, if any, of special good time by the warden for exemplary conduct, and that the parole board being statutorily empowered to cause forfeiture of good time incident to parole revocation, had inquired into the forfeiture, if any, of good time at the parole revocation hearing.*

Original action in the Court of Appeals. Submitted Division 2 January 8, 1970, at Lansing. (Docket No. 6,418.) Decided May 26, 1970. Leave to appeal granted August 12, 1970. See 383 Mich 817.

Complaint by Joseph H. Warren for order of superintending control against the Michigan Parole Board to compel restoration of his parole. Order of superintending control granted if necessary.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman,* Assistant Attorney General, for the people.

*Joseph H. Warren, in propria persona.*

Before: LEVIN, P. J., and HOLBROOK and BRONSON, JJ.

LEVIN, P. J. The question presented is whether an indigent parolee is entitled to have counsel provided at state expense to represent him at a parole revocation hearing.

Joseph H. Warren was sentenced in 1960 to serve 2 to 15 years for breaking and entering in the nighttime. He was paroled and in July, 1968 returned to prison charged with parole violation. He appeared before the parole board, claimed that he was indigent and requested the appointment of counsel to represent him at the statutory hearing on the parole violation charges. The request was denied. Following the hearing the board ordered that he be incarcerated for a minimum period of 18 months before his status would again be reviewed.

Upon Warren's petition, our Court issued an order requiring the parole board to show cause why a writ of superintending control should not issue granting him the relief requested in his petition.

The pertinent statute provided:

"Whenever a parole prisoner is accused of a violation of his parole * * * he shall be entitled to a fair and impartial hearing of such charges.

\* \* \* Upon such hearing such parole prisoner shall be allowed to be heard by counsel of his own choice, *at his own expense,* and may defend himself." MCLA § 791.240 (Stat Ann 1954 Rev § 28.2310).[1] (Emphasis supplied.)

In *Saunders* v. *Department of Corrections, Parole Board* (1968), 15 Mich App 183, *leave to appeal denied* (1969), 381 Mich 818, *cert. den.* (1970), 396 US 1025 (90 S Ct 602, 24 L Ed 2d 520),[2] we held that the Due Process Clause does not require the appointment of counsel at public expense to represent indigent parolees at parole revocation hearings.[3] An additional issue had been raised relating to the Equal Protection of the Laws Clause, but we said that it was unnecessary to consider the issue on the merits because even if it was decided that the provision of our statute permitting representation by an attorney when the parolee has sufficient financial resources to hire one unconstitutionally discriminates against an indigent person, such a decision would not benefit Saunders. We said, "We find it unnecessary to consider this issue raised on its merits. Whether this Court held such portion of the statute constitutional or unconstitutional would afford no relief to plaintiff".

---

[1] This statutory provision was repealed by PA 1968, No 192, which also reenacted as CL 1948, § 791.240a (Stat Ann 1970 Cum Supp § 28.2310[1]) the substance of the quoted language but eliminated the "at his own expense" clause. The reenacted provision in relevant part now provides that "the accused prisoner shall be given an opportunity to appear personally or with counsel and answer to the charges placed against him." See *Hoffman* v. *Alaska* (Alaska, 1965), 404 P2d 644, construing an Alaska statute providing that in probation revocation proceedings the defendant has "the right to be represented by counsel" as requiring the appointment of· counsel for indigents.

[2] The denial of leave to appeal or of *certiorari* imparts no expression of opinion upon the merits of the case. See *Frishett* v. *State Farm Mutual Automobile Insurance Company* (1967), 378 Mich 733.

[3] Contrast *People* v. *Braziel* (1969), 17 Mich App 411.

Judges of our Court have declared that we are not bound by the decisions of our brothers and that one panel of our Court is, therefore, free to decide a question differently than it has already been decided by a panel to which the question has previously been presented.[4]

We think there are compelling reasons to re-examine the issue presented in *Saunders*. The Michigan legislature has declared that parolees may be represented by counsel at parole revocation hearings. Thus, even if the Due Process Clause does not require that parolees in every jurisdiction · be permitted to appear with counsel, the question remains whether Michigan denies indigent parolees equal protection of the laws when it permits parolees who can afford counsel to be represented by counsel and refuses to assign counsel for the indigent.

A decision on the merits cannot be avoided by assuming that a finding of unconstitutionality would not profit the parolee. Although a declaration of unconstitutionality could be viewed as depriving both nonindigent and indigent parolees of the right

---

[4] *Hackett* v. *Ferndale City Clerk* (1965), 1 Mich App 6; *Buscaino* v. *Rhodes* (1969), 20 Mich App 329, 333 (GILLIS, J.); *People* v. *Barker* (1969), 18 Mich App 544, 553 (LEVIN, J.). Compare *People* v. *LaRoe* (1969), 18 Mich App 262, with *People* v. *Totty* (1968), 10 Mich App 462.

We are aware that a failure to follow our own decisions creates precedential uncertainty. Nevertheless, most persons would agree that litigants should not be barred from challenging any precedent. The question is thus how, not whether, our decisions can be challenged in our Court. We have informally considered the practices of other jurisdictions: *en banc* hearings, certification of questions to the Supreme Court and appeal as of right to the Supreme Court when a dissenting opinion is filed. Each technique has its advantages and disadvantages. Some, or perhaps all, would require rule-making by the Supreme Court. As to *en banc* hearings, the time consumed in deciding whether to convene our court *en banc,* and in hearing *en banc* cases (including, for a number of the members of our Court, traveling to the place of hearing) and preparing, circulating and considering the completed opinions might prove unwarranted in view of the work load of the Court and the availability of review by the Supreme Court to resolve conflicts.

to counsel, that has not been the path that has been followed by the Supreme Court of the United States in dealing with similar questions.

In *Griffin* v. *Illinois* (1956), 351 US 12, 18 (76 S Ct 585, 100 L Ed 891), the Court acknowledged that:

"It is true that a state is not required by the Federal constitution to provide appellate courts or a right to appellate review at all."

Nevertheless, it held that it was a denial of due process and of equal protection for a state to deny appellate review solely on account of a defendant's inability to pay for a transcript. The remedy fashioned was not to eliminate appellate review altogether but rather to require the state to provide adequate and effective appellate review to indigent defendants. Similarly, in *Douglas* v. *California* (1963), 372 US 353 (83 S Ct 814, 9 L Ed 2d 811), *reh. den.* 373 US 905 (83 S Ct 1288, 10 L Ed 2d 200), the Court held that appellate counsel must be provided an indigent person where a man of means is entitled to be represented upon appeal by a lawyer.[5]

In *Saunders* we concluded (p 185):

"Plaintiff herein appeared before an administrative board under a statutory procedure. Parole revocation proceedings are not 'judicial proceedings' requiring counsel under due process. *Jones* v. *Rivers* (CA 4, 1964), 338 F2d 862; *Rose* v. *Haskins* ([CA 6, 1968], 388 F2d 91, 97); *Wingo* v. *Lyons* (Ky 1968), 432 SW2d 821."

None of the three cases so cited in *Saunders* dealt with the issue in terms of a possible denial of *equal*

---

[5] Similarly, see *Lane* v. *Brown* (1956), 372 US 477 (83 S Ct 768, 9 L Ed 2d 892); *Burns* v. *Ohio* (1959), 360 US 252 (79 S Ct 1164, 3 L Ed 2d 1209).

*protection of the laws.* They hold, rather, that it is not a denial of *due process* to revoke a parole without a hearing (*Rose* v. *Haskins, supra*), that *due process* does not require that counsel be provided an indigent parolee (*Jones* v. *Rivers, supra*), and that a parole revocation hearing is not a critical stage requiring the appointment of counsel (*Wingo* v. *Lyons, supra*).[6]

The equal protection question was not squarely presented in *Jones* v. *Rivers.* That case arose under a Federal parole statute; the Equal Protection of the Laws Clause of the Fourteenth Amendment is a limitation on state, not Federal, action.[7] In both *Rose* and *Wingo,* which did arise under state statutes, the issue was whether the statutory provisions concerning parole revocation satisfied minimal requirements of due process; there was no claim that poor parolees were accorded a different process than those with financial means.

In our research we have found not a single case, other than *Saunders,* arising under a statute such as ours (expressly permitting or interpreted as permitting parolees to appear with counsel) where the

---

[6] The Kentucky statute (KRS 439.440), construed in *Wingo* v. *Lyons,* provides for a hearing before the parole board whenever a parolee is returned to prison, but is silent as to whether the parolee may appear with counsel.

*Cf. Beal* v. *Turner* (1969), 22 Utah 2d 418 (454 P2d 624); *State* v. *LeVier* (1969), 203 Kan 626 (455 P2d 534); *People, ex rel. Smith,* v. *Deegan* (1969), 32 App Div 2d 940 (303 NYS2d 789).

See, generally, Notes, Freedom and Rehabilitation in Parole Revocation Hearings, 72 Yale LJ 368 (1962); Parole Status and Privilege Concept, Duke LJ 139 (1969).

[7] We recognize that the United States Supreme Court has held that discrimination may be so unjustifiable as to violate due process and that the Federal courts have not hesitated to relieve against such discrimination even though there is no equal protection clause restraining Federal action. See *Bolling* v. *Sharpe* (1954), 347 US 497, 499 (74 S Ct 693, 98 L Ed 884); *Schneider* v. *Rusk* (1964), 377 US 163 (84 S Ct 1187, 12 L Ed 2d 218); *Fernandez* v. *Meier* (CA 9, 1969), 408 F2d 974; *Miller* v. *United States* (CA 9, 1967), 388 F2d 973, 976, 977. See *Earnest* v. *Willingham* (CA 10, 1969), 406 F2d 681, discussed *infra.*

question decided[8] was whether it is a denial of equal
protection to refuse to provide counsel at state ex-
pense to indigent parolees.[9]

Procedural claims advanced by parolees have, as
in the cases relied on in *Saunders,* been largely an-
alyzed in terms of whether parolees have rights, or
just privileges,[10] whether the due process clause
provides any protection to parolees and whether
revocation is a "critical stage." Little attention has
been given to the issue before us of whether the
disparity in the representation of nonindigent and
indigent parolees constitutes an invidious, and,

---

[8] In *Lawson* v. *Coiner* (D W Va, 1968), 291 F Supp 79, relied
on by our Court in *Saunders,* the prisoner contended that (p 81)
"he was denied his right to appointed counsel at the parole revoca-
tion hearing in violation of the Sixth Amendment as applied through
the Due Process Clause of the Fourteenth Amendment." Under
West Virginia law the parolee "and his counsel" are entitled to a
hearing on parole violation charges. The United States District Court
held that parole revocation is not a critical stage and that indigents
do not have a right to the appointment of assigned counsel. The
equal protection question was neither adverted to nor discussed in
the opinion.

[9] In 21 States the statute regarding parole revocation does not
expressly require a hearing. In 20 States there is a statutory right
to a hearing, but no express statutory right to appear with counsel.
In two States the statute specifically precludes representation by coun-
sel, and in one State the statute provides that no hearing shall be held.

In *State* v. *Boggs* (1955), 49 Del (10 Terry) 277 (114 A2d 663),
the court construed its statute, under which the returned parolee
is to be given an opportunity of appearing before the board, as
conferring a right to appear with counsel. Similarly, *Warden of
Maryland Penitentiary* v. *Palumbo* (1957), 214 Md 407 (135 A2d
439). Contrast *Mottram* v. *State* (Me S Ct, 1967), 232 A2d 908.

Six States (Alabama, Code of Alabama, 1958, Title 42, § 12;
Florida Stats Ann § 947.23; Louisiana Rev Stats Ann § 15.574.9;
Montana Rev Code, 1947, §§ 94–9835; West Virginia Code, § 62–12–
19; New Jersey Stats Ann § 2A:168–4), like Michigan, authorize
representation by counsel at a statutory hearing.

There are surprisingly few cases interpreting these statutory pro-
visions.

[10] See, *e.g., Rose* v. *Haskins* (CA 6, 1968), 388 F2d 91, and cases
cited in footnote 12.

Pertinent is the following observation: "While one on parole is
not completely free, being theoretically in legal custody, there is
still a vast difference between a state of such restricted freedom
and actual imprisonment." *Jones* v. *Rivers,* p 862 (Sobeloff, J.).

therefore, unconstitutional discrimination against the poor.[11]

Two judicial opinions which have played a leading role[12] in the development of the law concerning the right of counsel in parole revocation proceedings are *Jones* v. *Rivers, supra,* and *Hyser* v. *Reed* (1963), 115 App DC 254 (318 F2d 225). *Jones* in turn is based on *Hyser.* And *Hyser* was influenced by earlier opinions of the United States Supreme Court, particularly *Escoe* v. *Zerbst* (1935), 295 US 490, 493 (55 S Ct 818, 79 L Ed 1566). There the United States Supreme Court held that it would not violate the constitution to revoke probation without a hearing.[13]

The force of the majority opinion in *Hyser* v. *Reed,* and of *Jones* which followed it, and of the state court decisions based on *Hyser* and *Jones,* have been largely undermined by *Mempa* v. *Rhay* (1967), 389 US 128 (88 S Ct 254, 19 L Ed 2d 336), where the United States Supreme Court held that when a con-

---

[11] See *Ferguson* v. *Skrupa* (1963), 372 US 726, 732 (83 S Ct 1028, 10 L Ed 2d 93); *Douglas* v. *California* (1963), 372 US 353, 356 (83 S Ct 814, 9 L Ed 2d 811), reh. den. 373 US 905 (83 S Ct 1288, 10 L Ed 2d 200).

[12] See *Robinson* v. *Cox* (1966), 77 NM 55 (419 P2d 253); *Johnson* v. *Stuckey* (1969), 203 Kan 253 (453 P2d 35); *Rose* v. *Haskins* (CA 6, 1968), 388 F2d 91; *Richardson* v. *Markley* (CA 7, 1965), 339 F2d 967; *Williams* v. *Dunbar* (CA 9, 1967), 377 F2d 505; *Lawson* v. *Coiner, supra,* fn. 8. In these cases the parolee did not claim that he had suffered discrimination because of indigency but rather that due process required procedures that had not been followed. These claims were in each instance rejected in part on the authority of *Jones* and *Hyser.*

[13] In *Escoe* v. *Zerbst* the applicable statute provided that a probationer arrested by a parole officer shall be taken before the court which may revoke the probation and impose any sentence that might originally have been imposed. *Escoe* had been placed on probation, arrested on a charge of probation violation and transported to prison without being brought before the court. The United States Supreme Court ruled that the requirement that the arrested probationer be brought before the court was mandatory and that he was entitled to a "hearing," but (p 493) "not a trial in any strict or formal sense—rather, an inquiry so set in its range to the needs of the case as to justify the conclusion that discretion had not been abused by the failure of the inquisitor to carry the probe deeper."

victed person is placed on probation and imposition of sentence is deferred, counsel must be offered and provided indigents at a hearing to consider revocation of probation and sentencing. *Mempa* manifestly modifies, perhaps overrules *sub silentio, Escoe* v. *Zerbst;* if there is a constitutional right to counsel at a probation revocation hearing, then clearly there must be a right to a hearing.

In *Jones* v. *Rivers, supra,* there are three opinions. In the lead opinion, unequivocably signed by only one judge (Judge Boreman), the Court reviews earlier United States Court of Appeals decisions concerning parole revocation hearings under Federal statutes.[14] In *Hyser* v. *Reed, supra,* the Court sat *en banc.* There are four separate opinions in addition to the majority opinion. The majority held that neither a Federal statute, which provides that a retaken prisoner shall be given an opportunity to appear before the board, nor the Due Process Clause requires the board to allow cross-examination of its sources of information, discovery of its files or a right of compulsory process, and that an indigent prisoner is not entitled to be furnished with counsel even though the Court had earlier construed the statute as allowing a parolee who could afford to pay a lawyer's fee to appear with counsel (see footnote 14).

---

[14] The statute applicable in the District of Columbia (DC Code, § 24–206) provided that when a parolee "has been retaken under a warrant issued by the board of parole, he shall be given an opportunity to appear before the board." The United States Court of Appeals for the District of Columbia held that under this statute the parolee had the right to be represented by counsel of his own choice and employment (*Fleming* v. *Tate* [1946], 81 App DC 205 [156 F2d 848]). The same Court [*Robbins* v. *Reed* [1957] 106 App DC 1951 [269 F2d 242]) similarly construed the comparable Federal statute applicable to Federal prisoners generally outside the District of Columbia. (18 USC, § 4207.) The right thus recognized could be availed of only by those who had the financial means to exercise it.

In *Jones* v. *Rivers, supra,* which, like *Hyser* v. *Reed,* was decided before *Mempa* v. *Rhay, supra,* the issue of the right to counsel was presented in a case involving the construction of the parole statute applicable in the District of Columbia. While the lead opinion in *Jones* v. *Rivers* aligns itself conceptually with the majority opinion in *Hyser* v. *Reed,* it is apparent that the Court was also heavily influenced by its recognition of how incongruous it would appear if a decision of the Fourth Circuit construed the District of Columbia statute differently than it would clearly (in the light of *Hyser* v. *Reed*)[15] be construed by the Court of Appeals for the District of Columbia.[16] One of the judges (Judge Haynsworth) separately concurred, saying that, in a case where the absence of counsel would impair the "fairness" of the revocation hearing, counsel might be required, but not in a "routine case," such as the one there at hand, where the parolee pleads guilty to the parole violation charges.[17] The third judge (Judge Soberoff) would require that counsel be provided indigents whenever there is a factual dispute

---

[15] In *Hyser* v. *Reed* the Court of Appeals for the District of Columbia construed the Federal parole statute generally applicable outside the District of Columbia. Both that statute and the statute applicable in the District are alike in relevant part; see footnote 14.

[16] "Thus it would seem presumptuous for this court to undertake to lay down requirements for the governance of the District of Columbia parole board which are at variance with those laid down by the Court of Appeals of the District of Columbia." *Jones* v. *Rivers,* p 875 (Boreman, J.).

[17] Judge Haynsworth, speaking for the Court in *Boddie* v. *Weakley* (CA 4, 1966), 356 F2d 242, 243, in an opinion also signed by Judge Boreman, described *Jones* v. *Rivers* as holding only that "a District of Columbia prisoner is not entitled to the services of appointed counsel in a *routine* parole revocation hearing". (Emphasis supplied.) He again spoke of a requirement of "fundamental fairness". The prisoner in that case had, however, waived appointment of counsel and no relief was granted him. Similarly, in *Gaskins* v. *Kennedy* (CA 4, 1965), 350 F2d 311, the Court carefully described its limited holding in *Jones* v. *Rivers,* noting the qualifications in the two concurring opinions.

as to the violation charges, but agreed that, since Jones had pled guilty, the failure to have provided him counsel did not deprive him of constitutional rights.

Although in both *Hyser* v. *Reed* and *Jones* v. *Rivers* the question of the indigent's right to the appointment of counsel arose in the context of a statute which had been construed as conferring a right of appearance with counsel by those who could afford to hire a lawyer, in neither the majority opinion in *Hyser* nor the lead opinion in *Jones* did the court address itself to the issue of possible invidious discrimination in allowing parolees of means to appear with counsel and not providing counsel for indigent parolees, and even the concurring opinions in *Jones* v. *Rivers* dealt with the question more in terms of the function of counsel than in terms of possible discrimination.

It is understandable that when probationers did not have a constitutional right to a hearing, as held in *Escoe* v. *Zerbst, supra,* courts would be reluctant to recognize greater rights in parolees and would conclude that what need not be permitted need not be provided, that if a probation can be revoked without a hearing, so too can a parole; and that since this could constitutionally be done without a hearing, to take the next step and conclude that counsel need not be assigned indigent parolees. This analysis is seriously undermined by the decision in *Mempa* v. *Rhay,* and also by other decisions of the United States Supreme Court which have held that stages even before charges are filed, *e.g.,* lineup[18] and custodial interrogation,[19] are criti-

---

[18] *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149).
[19] *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

cal,[20] and, therefore, counsel must be assigned indigents.

*Mempa* v. *Rhay* arose under Washington's indeterminate sentence law.[21] In that state the sentencing judge decides whether to place the convicted person on probation, but does not set either the maximum or minimum sentence of those sent to prison. The maximum is established by law, the minimum by the parole board. The hearing at which Mempa was denied counsel was a hearing to determine the trial court's recommendation to the parole board concerning the minimum sentence. If, as held in *Mempa,* a hearing to determine a recommendation by a judge to a parole board concerning sentence length is critical, requiring the appointment of counsel, it is somewhat difficult to understand why it is not just as important to provide counsel when the issue is whether a parole should be revoked and the parolee incarcerated,[22] especially in cases where there is

[20] While the traditional view is that parole is not part of the criminal adjudicatory process (see cases cited in footnote 11), more recent decisions suggest that the artificial designation of certain proceedings as "administrative" will not withstand judicial scrutiny where the challenged tribunal has the power to incarcerate the accused. See *In re Gault* (1967), 387 US 1 (87 S Ct 1428, 18 L Ed 2d 527).

[21] The Washington rules of criminal procedure require the trial court to sentence those convicted persons not placed on probation to the maximum term provided by law for the offense of which they are found guilty (Washington Revised Code, § 9.95.010). The actual determination of the time to be served is made by the Board of Prison Terms and Paroles within six months after the prisoner is admitted to prison (Washington Revised Code, § 9.95.040). The trial judge is required by a statute to furnish the parole board with a recommendation as to the length of time to be served (Washington Revised Code, § 9.95.030). The Supreme Court was advised that these recommendations are accorded great weight by the board (389 US 135).

[22] We are mindful of the peculiar status of the paroled prisoner. Technically he occupies a different place in the law than the probationer—the principal difference being that he is subject to supervision from an administrative agency, while probation is generally within the province of the trial court. Yet when the parolee and

a factual dispute as to whether or not there has been a violation of parole.

However, most courts, including *Wingo* v. *Lyons* (relied on in *Saunders*), that have considered the question have held *Mempa* inapplicable to parole revocation proceedings.[23]   We have found but one case where *Mempa* was read differently.   In *Commonwealth* v. *Tinson* (1969), 433 Pa 328 (249 A2d 549), the Supreme Court of Pennsylvania concluded, on the authority of *Mempa,* that parole revocation is a critical stage and parolees henceforth must be given an opportunity to appear with counsel.[24]

the probationer are accused of violations of their conditional status, the differences between them assume insignificant proportions.

Of paramount concern to both of them is the impending loss of their liberty.   It simply is not reasonable to suggest that in the face of this common threat to a constitutionally protected interest—liberty—the parolee should be denied procedural safeguards now freely available to the probationer.

In *Lane* v. *Department of Corrections, Parole Board* (1970), 383 Mich 50, 61, the Michigan Supreme Court recently recognized the similarity between the sentencing powers of the trial courts and the discretionary powers of the parole board:

"The trial court possesses the discretionary right to determine minimum sentences and, within the statutes, the parole board possesses the *same discretion* in determining the length of parole." (Emphasis supplied.)   This correspondence serves to emphasize the incongruity of refusing to apply to parole revocation procedures the constitutional guarantees which accompany deferred sentencing.

[23] In a number of cases it has been held that the ambit of *Mempa* is to be confined to proceedings for the revocation of probation in cases where sentencing has been deferred. *Beal* v. *Turner* (1969), 22 Utah 2d 418 (454 P2d 624); *Williams* v. *Patterson* (CA 10, 1968), 389 F2d 374; *Johnson* v. *Stricker* (1969), 203 Kan 253 (453 P2d 35).

[24] "The point is that counsel is required at the hearing before the parole board to insure that *that hearing* is constitutionally valid. The fact that courts have a limited power of review of parole board proceedings makes the need for counsel at the parole hearing all the more important.   The recommitment hearing determined whether or not appellant would be returned to prison.   There can be no question that a proceeding at which a determination of that kind was made was a 'critical stage'." (Emphasis by the Court.)   249 A2d 552.

It appears that the Pennsylvania legislature responded by requiring the public defender to appear and represent those unable to obtain legal counsel because of insufficient funds at both probation and parole proceedings and revocations thereof.   See *Commonwealth, ex rel. Patterson,* v. *Pennsylvania Board of Probation and Parole* (1969), 215 Pa Super 532 (258 A2d 693).

In *Perry* v. *Williard* (1967), 247 Or 145 (427 P2d 1020),—a pre-*Mempa* case—the Oregon Supreme Court held, on the authority of *Griffin* v. *Illinois, supra,* that counsel must be provided an indigent in probation revocation proceedings even though the defendant had previously been sentenced.[25] The Court considered the opinions in *Jones* v. *Rivers* and *Hyser* v. *Reed* and expressly aligned itself with the views of Judges Bazelon and Edgerton, in dissent in *Hyser* v. *Reed,* who would provide indigent parolees with counsel. The Oregon Supreme Court declared (p 149):

"We are aware that a proceeding to review performance on probation is not a criminal trial, but that distinction does not justify the denial of equal protection of the laws when liberty is concerned."[26]

The Federal parole board administratively adopted the view of the Court of Appeals of the District of Columbia that under the Federal statute those financially able to retain counsel were entitled to appear with counsel at a revocation hearing. In *Earnest* v. *Willingham* (CA10, 1969), 406 F2d 681, the United States Court of Appeals for the Tenth Circuit declared that in *Hyser* v. *Reed* the Court of Appeals for the District of Columbia "did not face the issue [of discrimination against indigent parolees] which is squarely presented to us and which we must decide". The Court ruled that the Federal government[27] could no longer permit discrimination against those who could not afford to retain counsel (pp 683, 684):

---

[25] Many courts (see fn. 23) distinguish *Mempa* on the ground that there the defendant had not been sentenced, a factor mentioned by the Supreme Court in requiring counsel.

The Oregon Supreme Court expressly recognized and rejected this possible distinction in this pre-*Mempa* case.

[26] Similarly, see *Hoffman* v. *Alaska* (Alaska, 1965), 404 P2d 644; *Hewett* v. *North Carolina* (CA 4, 1969), 415 F2d 1316.

[27] See footnote 7.

"To pose the question is to answer it, for *Griffin* and its progeny have made it clear beyond doubt that where liberty is at stake a state may not grant to one even a nonconstitutional statutory right such as here involved and deny it to another because of poverty. And it goes without saying that a Federal agency may not consistently with Fifth Amendment due process, do that which a state is forbidden to do by Fourteenth Amendment due process."

In *Puchalski* v. *New Jersey State Parole Board* (1969), 104 NJ Super 294 (250 A2d 19), the superior court of New Jersey, in an instructive opinion, held that equal protection does not require that counsel be assigned at public expense to assist a prisoner in making a *plea for parole.* The court noted that in *Griffin* and *Douglas* the United States Supreme Court rested its decisions requiring that free transcripts and assigned appellate counsel be provided to indigent appellants on both the equal protection and due process clauses of the Fourteenth Amendment without stating the standards by which these provisions were applied. The Court observed (pp 298, 299):

"Certainly not all disadvantages of the poor are denials of equal protection. Nor do all burdens under which the poor labor because of their poverty constitute denials of due process of law. *The question becomes,* under both the Equal Protection and Due Process Clauses, *whether the particular 'right' (or 'privilege') is of such fundamental importance that it should not be denied anyone because* of lack of funds. See 'Discrimination Against the Poor and the Fourteenth Amendment,' 81 Harv L Rev 435, 437, 438 (1967); *Gardner* v. *California* ([1969], 393 US 367 [89 S Ct 580, 21 L Ed 2d 601]).

"The question is, therefore, whether the aid of counsel in seeking a parole is of such importance that the state should be required to furnish counsel

for this purpose to those who cannot afford to pay for it." (Emphasis supplied.)[28]

The New Jersey Court concluded that since a plea for parole does not ordinarily present a fact issue to be resolved, and there is no adjudication of guilt or innocence, counsel would be of limited assistance and, therefore, was not of such fundamental importance that equal protection requires that free counsel be assigned indigents.[29] The Court went on, however, to say, in *dictum* (p 301):

"[i]n *revocation* proceedings—*both as to probation and parole*—there are usually specific factual allegations concerning the conduct of the probationer or parolee said to constitute a violation of probation or parole. An attorney could prove most useful, even essential in defending against such allegations of misconduct—presenting contrary evidence or cross-examining adverse witnesses if necessary." (Emphasis supplied.)

There are disputed factual issues in the case at hand. Warren was charged with failing to notify his parole agent of a change of address, failing to furnish written reports once a month, and failing to be off the street by 11 p.m. unless his employment required that he be out later. He pled not guilty to each of those charges. The parole board found him guilty after a hearing at which he was unrepresented despite his request for counsel.[30]

---

[28] *Cf. Miller* v. *Department of Treasury, Revenue Division* (1969), 18 Mich App 145, 170, 171 (LEVIN, J., dissenting); see, also, footnote 32.

[29] Compare *Warden of Maryland Penitentiary* v. *Palumbo* (1957), 214 Md 407 (135 A2d 439, 442).

[30] It appears from the record in this case that a somewhat different procedure is followed by the Michigan parole board in violation hearings depending on whether or not the parolee is represented by counsel. Whether these differences significantly affect the fairness of the hearing does not appear. Despite exhortation from this Court, the parole board has never seen fit formally to promulgate and adopt rules and regulations regarding its procedures and to

The analysis of the Tenth Circuit[31] and of the New Jersey Court is similar to that of Judges Haynsworth and Soberloff in *Jones* v. *Rivers,* who also would have the right of the indigent parolee to counsel turn on the importance of counsel in the particular proceeding—Haynsworth on whether the absence of counsel impairs the fairness of the proceedings; Soberloff on whether there is a factual dispute. In our opinion their analyses are essentially correct. Where, as here, there is a factual dispute, counsel is of fundamental importance, the absence of counsel impairs the fairness of the proceedings, the stage is critical, and the refusal to appoint counsel for indigent parolees is, therefore, a denial of equal protection of the laws.[32]

We recognize that counsel might be of assistance even in a case where the parole violation is admitted. An advocate might succeed in dissuading the parole board from revoking parole or in otherwise ameliorating the length or place of the renewed incarceration.[33]  To decide this case, it is not, however, necessary to express an opinion whether the denial of counsel denies equal protection in a case where his function might be limited to a plea to discretion.  To decide that question would require a better understanding of the role and possible effectiveness of

publish them in the manner provided by law.  See *Lane* v. *Department of Corrections, Parole Board* (1968), 14 Mich App 557, 564.

[31] In *Coiner* v. *United States* (CA 10, 1969), 409 F2d 853, the United States Court of Appeals appeared to limit its holding in *Earnest* v. *Willingham* to cases where there is a factual dispute.  In that case the parolee admitted violation of parole; it was held that the failure to appoint counsel in such a case did not constitute a violation of the parolee's constitutional rights.  See, also, *Wilkerson* v. *Patterson* (DC Colo, 1969), 303 F Supp 665.

[32] "The law does not undertake to redress all imbalances between rich and poor, but it can be said that when it is alleged and denied that the retaken prisoner has violated the conditions of his parole, and representation by retained counsel is permitted, this advantage should not be denied solely because of poverty." *Jones* v. *Rivers, supra,* p 876 (Soberloff, J.).

[33] See footnote 22.

counsel in such a case than we are now in a position
to make either from the record presented or based
on our own personal knowledge.  Having in mind
the reservations implicit in the opinions we rely on,[34]
we hesitate to now define the indigent parolee's right
to counsel more broadly than to say that there is
such a right where there is a factual dispute.

Like the *Earnest* v. *Willingham* Court, we are
aware that our parole board may lack express au-
thority or funds with which to provide counsel for
indigent parolees.  We, nevertheless, say, with that
Court, that where constitutional rights are in-
volved the courts are not impotent to take whatever
steps are necessary to protect constitutional guar-
antees.  Within ten days of our mandate the parole
board shall either provide Warren with counsel and
schedule a new hearing on the parole violation
charges, to be held within 30 days, or the attorney
general shall file an alternative proposal for the
implementation of this decision.[35]

There is an additional issue which requires discus-
sion.  The parole board advised Warren that with
special good time[36] the maximum expiration date
of his sentence is March 16, 1970 and, with regular
good time, April 16, 1972.  Warren contends these
dates are inaccurate and the parole board responds
that they were correctly computed and suggests as
a possible explanation for the differing views con-
cerning expiration dates that good time may have

---

[34] Similarly, see the opinion of Judge Skelly Wright in *Hyser* v.
*Reed, supra,* p 261.

[35] In *Petition of Finley* (1969), — Mont — (460 P2d 267), the
Supreme Court of Montana dismissed a petition for the appointment
of counsel upon being informed by the Montana defender project
that the parole board had "after meeting with him, decided to grant
hearings in all revocation cases and to permit indigent persons to be
represented at such hearings by the defender project." See, also,
footnote 24.

[36] A warden can award special good time.  MCLA § 800.33 (Stat
Ann 1954 Rev § 28.1403).

been forfeited as a penalty for parole violation. This, of course, presents a factual issue, one which we would not hesitate to consider and decide, as we have in the past. To the extent the record is inadequate, it could be supplemented by requesting a more specific response from the parole board and a precise calculation of the good time allowed and of any good time forfeited.

However, since there must be another hearing on the issue whether Warren's parole should be revoked, at which Warren is represented by counsel, the facts in regard to his claim that his sentence has already expired and that his maximum expiration dates have been incorrectly computed can be developed at the hearing.

An appropriate writ of superintending control shall issue if necessary.

BRONSON, J., concurred.

HOLBROOK, J. (*dissenting*). The writer finds himself unable to join in signing the majority opinion of his esteemed brothers of the bench. My opinion was written in January, 1970, as reflecting the prevailing law on the subject in Michigan, and notwithstanding the scholarly prevailing opinion herein, I am constrained to dissent.

This is an original action for superintending control by a state prisoner against the Michigan parole board. Plaintiff is presently serving a sentence of 2 to 15 years imposed in 1960 by the Honorable William John Beer, Circuit Judge of Oakland County.

On four separate occasions, the parole board allowed plaintiff to serve his sentence beyond the prison enclosure on parole status: (1) 1961, (2) 1964, (3) 1965 and (4) 1967. All of plaintiff's paroles were revoked by the parole board: (1) 1963, (2)

1965, (3) 1966 and (4) 1968. The issues in this action pertain to the parole order of 1965 placing plaintiff on parole for 24 months and the revocation of that parole order by the parole board at a hearing held on September 8, 1966.

On July 29, 1966, a parole violation report was received by the parole board charging plaintiff with six separate violations. At the hearing plaintiff requested that the board appoint an attorney for him which was refused. Plaintiff at the hearing admitted violation of counts 1, 3, 4, and 5. One of the counts charged that plaintiff had been convicted in the Southgate Municipal Court on a charge of simple larceny. Because this conviction was a violation of parole *per se,* he was found to be automatically in violation of parole and his case was continued for review in 18 months.

Plaintiff's conviction in the Southgate Municipal Court was appealed by plaintiff to the Wayne County Circuit Court, where it was *nolle prossed* on August 16, 1967, for the reason "due to lapse of time from conviction in the lower court, necessary evidence and *res gestae* witnesses are no longer available." As a consequence of being informed of this action the parole board reopened the former hearing and held a further hearing on September 21, 1967. *At this hearing plaintiff again admitted violation of parole* by falsifying his report to his parole officer and by failure to keep his parole officer informed of his whereabouts, movements, activities and other violations. The parole board confirmed the violation of the previous parole and ordered that the violation penalty would be for the time he had served since his return, and that he be placed on parole for two years in Detroit. Plaintiff was found to be a parole violator the last time in August, 1968, by the parole

board and returned to prison where he is now a resident.

Plaintiff raises three issues which are stated and dealt with in order.

(1) *Was the 1966 parole revocation void because based on a misdemeanor conviction which was subsequently nolle prossed on appeal?*

The statute authorizes the parole board to act within its discretion in exercising the power to amend, revise, modify or rescind an order of parole. MCLA § 791.236 (Stat Ann 1954 Rev § 28.2306) and *Lane v. Michigan Department of Corrections, Parole Board* (1970), 383 Mich 50. Where an appellate court reverses a conviction which formed a part of the charged basis for parole revocation the prisoner is not entitled to discharge but rather to a reconsideration by the parole board of its prior action. The fact that at the rehearing the plaintiff again admitted violations of parole other than the conviction demonstrates that plaintiff has failed to show any error in this regard.

(2) *Was plaintiff denied equal protection and due process of law when he was denied appointed counsel at the revocation of parole hearing?*[1]

This question is answered in the negative because this Court decided the question in the case of *Saunders v. Department of Corrections, Parole Board* (1968), 15 Mich App 183.[2] The reasoning of *Saunders* is applicable in this case.

(3) *Does good behavior time allowance compel plaintiff's present discharge and was he entitled to a hearing explaining how "dead time" was determined by the parole board?*

---

[1] The prevailing opinion herein refers to the August 15, 1968, revocation hearing. At that hearing the charges were denied.

[2] *Leave to appeal denied* (1969) 381 Mich 818, *cert. den.* (1970), 396 US 1025 (90 S Ct 602, 24 L Ed 2d 520).

Under the statute, a prisoner receives a fixed amount of good behavior time for each month he has served without infraction of the prison rules. *The prisoner may also, at the discretion* of the warden, be given "special good time" for exemplary conduct which may not exceed 50% of the regular good time allowance. CLS 1961, § 800.33 (Stat Ann 1954 Rev § 28.1403). It is obvious that even if plaintiff received the maximum allowance under the statute, he could not possibly have to his credit sufficient good time to reduce a 15-year maximum sentence imposed in 1960 for a present date discharge. The computation by the department shows plaintiff's maximum expiration dates as March 16, 1970, or April 16, 1972, depending upon the allowance, if any, of special good time.

The parole board is empowered to cause the forfeiture of good time incident to parole revocation. MCLA § 791.238 (Stat Ann 1954 Rev § 28.2308). The fixing of the date of delinquency and the forfeiture, if any, of good time upon the finding of parole violation was a subject inquired into at the violation hearings and satisfied the statute. 2 Gillespie, Michigan Criminal Law & Procedure (2d Ed) § 776, p 991.

The order for superintending control should be denied.